[Crim. No. 3441.   First Dist., Div. One.   July 31, 1958.]

THE PEOPLE, Respondent, v. ROBERT TENNEY, Appellant.

George S. Youngling, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant, Robert Tenney, on three separate counts, was convicted of the unlawful possession, sale, and transportation of narcotics. He appeals from the judgment of conviction.

The attorney general contends that the notice of appeal was filed too late. Judgment was entered on August 12, 1957. The notice of appeal, dated August 26, 1957, was not filed with the clerk of the superior court until August 29, 1957. ▆ Under rule 31 of the Rules on Appeal such notices must be filed within 10 days after the rendition of the judgment. This rule is jurisdictional. (*People* v. *Riser,* 47 Cal.2d 594 [305 P.2d 18].) Thus, the appeal here involved appears to have been filed too late. But the rule is not absolute in its application. ▆ It is now well settled that, if the defendant is in

custody, and makes a good faith effort to file the required notice within the statutory period, but is prevented from doing so by the acts of the prison authorities, the appeal will be considered as having been filed in time. ■ The theory is that, if the notice of appeal is delivered to the prison officials within the statutory period with a request to mail it, such delivery is a constructive delivery to the appropriate county clerk, and the subsequent failure of the prison officials to prepare and mail the notice within time cannot adversely affect the rights of defendant. (*People* v. *Slobodian,* 30 Cal. 2d 362 [181 P.2d 868] ; *People* v. *Head,* 46 Cal.2d 886 [299 P.2d 872].)

■ The facts of the present case are such as to bring it within the rule of these cases. The affidavits disclose that after the judgment of August 12, 1957, on August 14th, defendant was sent to the reception center at Vacaville. He avers that on August 19, 1957, he ''prepared in writing and submitted a Notice of Appeal'' to the proper prison officials; that three or four days later he was informed by a prison clerk that the prison office had been delayed in typing his notice of appeal because of a heavy work schedule and that the superintendent would notify the proper officials that the delay was no fault of defendant; that the notice of appeal was not typed up until August 26, 1957, and not received by the county clerk until August 29, 1957. The superintendent at Vacaville avers that defendant applied for a ''Notification of Intent to Appeal'' to the prison officials on August 21, 1957, but that due to the work schedule in the prison it was not executed until August 26, 1957. It is further pointed out in that affidavit that, in August of 1957, Vacaville was in the process of organization and the staff disorganized and for this reason appellant ''was not given the opportunity to execute the Notification of Intention to Appeal until August 26, 1957.''

Thus, the only conflict is whether the notice to prepare the notice of appeal was delivered to the prison officials on August 19th or 21st. This conflict is immaterial. Either date, plus mailing time, was within the 10-day period. Thus, the notice of appeal was constructively filed in time.

On the merits, the facts are as follows: One John Keeys, a recent arrival from New York, in March of 1957, was employed as a salaried employee by the State Bureau of Narcotic Enforcement as an undercover agent. Pursuant to instructions, he took up residence in a Fillmore district hotel in San Francisco and began to make narcotic purchases from various

individuals. Early in April, 1957, Keeys met the defendant on two occasions and talked to him "vaguely" about narcotics. On April 17, 1957, about 7:30 p. m. he again met the defendant in front of a pool room on Fillmore Street. Keeys asked defendant if he had seen one Johnson, a known narcotic peddler in the area. Defendant replied that he had not, and asked Keeys "if I wanted some stuff, or needed some stuff, that he had bought some himself, and was going to cut it up, and he would sell me some." Keeys agreed to the purchase and defendant suggested that the transaction be completed at his mother's house, some two blocks distant. Keeys agreed and told defendant that he wanted to purchase $5.00 worth of heroin.

When the two men arrived at the home of defendant's mother, no one was there, and they were unable to get in. Keeys suggested that they go to his hotel room to complete the transaction. Defendant agreed. The two then proceeded to Keeys' room. Defendant thereupon produced two packages of white powder which he mixed together and then divided into sections, and then put a small quantity of the powder into a paper and handed it to Keeys. Keeys gave appellant $5.00 for the bindle, and defendant left with the balance of the powder. The powder delivered to Keeys, upon analysis, was discovered to be heroin. Appellant was arrested on May 2, 1957.

Defendant did not testify. Through his mother and brother he attempted to show that he was in Sacramento on April 17, 1957, but this testimony was obviously not believed by the jury.

Defendant, in three separate counts, was charged with the illegal possession, sale, and transportation of narcotics, all growing out of the facts as testified to by Keeys. He was found guilty on all three counts and was sentenced on each count, the terms to run concurrently. Defendant appeals.

Clearly, the judgment was too inclusive. ▉ When a single act relates to but one victim, and violates but one statute, it cannot be transformed into multiple offenses by separately charging violations of different parts of the statute. The Supreme Court has so decided. In *People* v. *Roberts*, 40 Cal.2d 483 [254 P.2d 501], the appellant and another defendant were charged with illegally transporting, selling and possessing heroin, and with conspiracy. The defendants were found guilty on all four counts. The Supreme Court held that only the sale and conspiracy convictions could stand. In

so holding, the court stated (p. 491): "The information charges and there is evidence that on April 3d defendant Roberts transported, furnished, and possessed heroin. Each of these acts is denounced by section 11500 of the Health and Safety Code. The three acts are charged and adjudged as separate crimes. However, 'cooperative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted.' (*People* v. *Clemett* (1929), 208 Cal. 142, 144 [280 P. 681]; see also *People* v. *Knowles* (1950), 35 Cal.2d 175, 187 [217 P.2d 1].) The present case resembles the Clemett case in that the only possession and transportation of heroin shown were those necessarily incident to its sale. And as in the Clemett case (p. 150 of 208 Cal.) the error can be corrected by this court."

This court was presented with the same problem in *People* v. *Branch,* 119 Cal.App.2d 490 [260 P.2d 27]. We there stated (p. 495):

"There is one last point that must be considered, and that is whether appellant has been improperly convicted of two offenses—possession and sale—when, in fact, the possession was incidental to the sale. Appellant did not raise this point in his briefs, but the point was suggested, with commendable objectivity, by the attorney general because of the opinion of the Supreme Court in *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501]. In that case it was held that, where the possession and transportation of a narcotic were incidental to a sale of the same, separate convictions for the possession and transportation could not be had. The case is based upon the interpretation of section 654 of the Penal Code. . . . Under the rule of this section, as interpreted by the Supreme Court, a single criminal act, whether it gives rise to included offenses or not, can only be punished once. By this section, it is indispensable in order to impose separate punishments that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made. The evidence in the instant case, so viewed, shows that the possession of appellant of the marihuana was incidental to its sale or offer to sell to Belle. For that reason but one offense is involved.

"The attorney general seeks to avoid the effects of this error by pointing out that, since the sentences on the two

counts have been made to run concurrently, no possible prejudice can result from the judgment. This is an unrealistic approach. The dual judgment may very well adversely affect appellant's rights when he comes before the proper authorities to have his definite terms fixed. This factor was sufficient to require a reversal in *People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321]; *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501]; *People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1]; *People* v. *Craig,* 17 Cal.2d 453 [110 P.2d 403].

"For the above reasons the judgment is affirmed as to count three involving the charge of an offer to sell a narcotic, reversed as to count one involving a charge of unlawful possession, and the order denying a new trial is affirmed."

██ The attorney general fairly and properly concedes that, under the rule of the Roberts and Branch cases, *supra,* the transportation count cannot be sustained. It is admitted that, under the evidence, the transportation of the narcotics was incidental to its sale to Keeys and to the possession of the remaining portion not sold to Keeys.

Keeys' testimony, however, does support both the sale and possession charges. As to the sale count this is obvious. As to the possession count, while the possession obviously existing in appellant prior to the sale was incidental to the sale, that is not true of the possession subsequent to the sale. Under the evidence, Keeys only purchased a portion of the heroin possessed by appellant. When appellant left Keeys' hotel room after the sale was complete, he took the remainder of the heroin with him. While that subsequent transportation cannot be separated from the subsequent possession, and so cannot support a separate transportation charge, it does support a separate possession charge. The subsequent possession by appellant was in no way incidental to the prior sale. The problem is similar to the one presented in *People* v. *Holliday,* 120 Cal.App.2d 562 [261 P.2d 301], where convictions of transportation and possession were sustained. After referring to the case of *People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1], in which it was held that there "can be only one conviction when a single act of transportation is proved and the only act of possession is that incident to the transportation," the court in the Holliday case stated (p. 564):

"Appellant, however, does not come within the protection of these principles because not merely a single but multiple and separate criminal acts are shown and the act of transportation is not incident to possession. Here appellant's conviction

of possession can be sustained upon the basis of his possession of marijuana both *before* and *after* the transportation and *apart* from such transportation. It will be recalled that when appellant offered to make a sale to Ruskin he first went back some distance behind a building and returned with his contraband merchandise. This justifies an inference that the marijuana was hidden there and was not brought in the coupé Kelly was driving. The crime of possession was then established and complete, and no transportation of the commodity had taken place. If the contemplated sale had been effected appellant would not have been involved in transporting his contraband back to the hotel. Even though the sale was not completed, appellant's transportation of the marijuana in the coupé was not incident to his prior possession and attempted sale. It was a separate and independent decision and act on his part. He could have returned it to its former hiding place or thrown it away. . . .

"Thus separate and distinct acts have been proved as the basis of each conviction. Such convictions may be sustained even though the acts on which each is based were closely connected in time and were part of the same criminal venture."

Thus appellant was properly convicted of both the sale and the possession of narcotics. The possession of the retained heroin was not incidental to the sale, but was a separate and distinct act.

For the foregoing reasons the judgment is reversed as to count three charging unlawful transportation, and is affirmed as to counts one and two involving charges of unlawful possession and sale.

Bray, J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 24, 1958. Spence, J., was of the opinion that the petition should be granted.