[Crim. No. 6319. Second Dist., Div. Two. Jan. 9, 1959.]

THE PEOPLE, Respondent, v. ALEX LOPEZ AYALA et al., Defendants; RICHARD GILBERT GARCIA, Appellant.

William A. Drake, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant Garcia was convicted of possession of heroin in violation of section 11500, Health and Safety Code. He has appealed from the judgment and order denying the motion for a new trial.

On the evening of November 26, 1957, Officer Woodring of the Monterey Park Police Department, observed three young men emerge from a car that he had had under intermittent surveillance and enter a restroom of a service station. They remained there some 35 minutes. In the meantime, Officers Hoiten and Kraft joined Woodring in response to his request for assistance. When the young men drove away, Officer Woodring followed their car closely, clocking it at a speed of 53 miles per hour in a 35-mile zone and ordered it to stop. One Contreras was driving. Appellant and defendant Ayala were also in the front seat. The other officers arrived immediately. The occupants were ordered out of the car and were questioned by Officer Woodring as to whether they had been drinking, to which they replied that they had been drinking beer. Contreras was informed that he would be cited for speeding. During the conversation, Officer Hoiten observed appellant remove his hand from his trouser pocket and toss backhanded a Pall Mall cigarette package that landed on the parkway a few feet behind him. Hoiten recovered the package, opened it and discovered that it contained a white powder which upon analysis proved to be heroin. Appellant and the other two men were arrested and searched. A hypodermic needle was found on Ayala.

As an outgrowth of the interrogation of appellant and information subsequently obtained, a criminal complaint was filed in the municipal court of Alhambra charging appellant with "the misdemeanor offense of: violation section 11721, Health

and Safety Code (Addicted to unlawful use of narcotics)."
Appellant was convicted of addiction and sentenced to 180
days in the county jail.

In the instant case, appellant pled the above municipal court
conviction and judgment in bar of this prosecution for unlaw-
ful possession. This defense, however, was overruled and appel-
lant was found guilty of possession as charged.

In seeking a reversal appellant argues that (1) he had been
once in jeopardy, and (2) the sentence herein constituted
double punishment for the same act, in violation of Penal Code,
section 654. There is no merit in either of these contentions.

 Appellant's first contention is based on the theory
that a violation of section 11721 for addiction cannot be com-
mitted without necessarily committing a violation of section
11500 (possession). His position, however, is not sound.

 The test in this state of a necessarily included offense
is simply that where an offense cannot be committed without
necessarily committing another offense, the latter is a neces-
sarily included offense. (*In re Hess*, 45 Cal.2d 171, 174 [288
P.2d 5].)

 It is not necessary that one must have narcotics in
his possession, in the sense that term is used in section 11500,
in order to be under their influence or addicted to their use,
since another person could administer the narcotics to the user
without his ever having possession thereof prior to their
injection into his system. Thus a person may at a given
moment have narcotics coursing through his veins and have
an unconsumed narcotic in his pocket or in his hand. Such
possession is independent of the fact that other narcotics have
been consumed and have been assimilated into the blood stream
of the user and he is then under the influence of narcotics
or perhaps addicted to the use thereof.

It is therefore clear that appellant has not been once in
jeopardy for the offense which is charged herein, viz., posses-
sion of a narcotic. Rather he has been charged and convicted
of two separate offenses consisting of entirely different ele-
ments: one being possession, dominion and control; the other
the addiction to narcotics.

Appellant's argument that he has been subjected to double
punishment is based on the theory that "the evidence shows
but one criminal act was committed"; that "the 'possession'
was merely incidental to the 'addiction' . . ." In support of
his position appellant relies on section 654, Penal Code, and
quotes as follows from *People* v. *Johnson*, 163 Cal.App.2d

58, at page 61 [328 P.2d 809]: "That code section [Pen. Code, § 654] embodies a rule of law somewhat broader than the double jeopardy rule and its corollary of included offenses. It provides that 'An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one.' Under the rule of this section, as interpreted by the Supreme Court, a single criminal act, whether it gives rise to included offenses or not, can only be punished once. By this section, it is indispensable in order to impose separate punishments that there be evidence of separate and divisible acts that are not incidental to each other."

While it is true that the applicability of section 654 is not limited to necessarily included offenses (*People* v. *Brown*, 49 Cal.2d 577, 591 [320 P.2d 5]; *People* v. *Knowles*, 35 Cal.2d 175, 187 [217 P.2d 1]), this section is not applicable where separate and distinct transactions are established, and each case is to be decided by a consideration of the particular facts involved. In *People* v. *Brown, supra,* at page 591, the court states the rule as follows: "Section 654 has been applied not only where there was but one 'act' in the ordinary sense [citation], but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654. Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts. [Citations.]"

In the Brown case, *supra,* death resulted from the commission of an unlawful abortion, and it was held that section 654 precluded convictions for both abortion and murder. In that case, there was but one act. In *People* v. *Knowles, supra,* the defendant was convicted of both armed robbery and kidnapping for the purpose of robbery. Our Supreme Court held that as the seizure and confinement were an inseparable part of the robbery, section 654 precluded punishment for both, distinguishing cases where the acts that formed the basis of the kidnapping conviction were separate from those that involved the actual taking of property. (See *People* v. *Dorman*, 28 Cal. 2d 846 [172 P.2d 686]; *People* v. *Brown*, 29 Cal.2d 555 [176 P.2d 929].) In *People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321], *People* v. *Clemett*, 208 Cal. 142 [280 P. 681], and *Schroeder* v. *United States*, 7 F.2d 60, where it was clear that more than one crime was committed by the defendant's conduct, it was

held that only one conviction could be upheld in that separate and distinct acts were not established.

There is no question in the instant case that there was more than one criminal act involved. Addiction, a physical state, is distinct from possession both in point of time, manner of accomplishment and the physical relationship between the individual and the contraband. Therefore, we are here only concerned with the question of whether the possession was incidental to addiction so that it may properly be said both were part of one transaction. This question was raised and discussed in *People* v. *Tenney,* 162 Cal.App.2d 458 [328 P.2d 254], where the defendant was convicted of unlawful possession, sale and transportation of narcotics. On appeal, the judgment was affirmed as to counts charging unlawful possession and sale. At page 463 the court stated: "Keeys' testimony, however, does support both the sale and possession charges. As to the sale count this is obvious. As to the possession count, while the possession obviously existing in appellant prior to the sale was incidental to the sale, that is not true of the possession subsequent to the sale. Under the evidence, Keeys only purchased a portion of the heroin possessed by appellant. When appellant left Keeys' hotel room after the sale was complete, he took the remainder of the heroin with him. While that subsequent transportation cannot be separated from the subsequent possession, and so cannot support a separate transportation charge, it does support a separate possession charge. *The subsequent possession by appellant was in no way incidental to the prior sale. . . .*" (Emphasis added.)

The facts of the instant matter establish that defendant was convicted of addiction, the validity of which is not challenged. The possession here involved was not incidental to his addiction, and the mere fact that evidence of possession was received in the municipal court case does not alter this fact. While possessing the instant heroin may have been incidental to a continuation of appellant's habit, it was not incidental or necessary to a commission of the first offense (addiction) for which appellant was convicted. The crucial point is that "addiction is a chronic rather than an ordinary acute offense" (*People* v. *Jaurequi,* 142 Cal.App.2d 555, 560 [298 P.2d 896]) and as such, once *use* has reached a state of *addiction,* the offense of addiction is complete. Once addicted, it cannot be said that *subsequent* possession was incidental thereto, for

the crime of addiction was fully consummated without regard to the subsequent possession.

The judgment and order are affirmed.

Herndon, J., concurred.

ASHBURN, J., Dissenting.—Judicial philosophy which weakens efficient enforcement of the laws, especially those aimed at suppression of the sale and use of narcotics, is to my mind a deplorable development of recent years. But I cannot acquiesce in what I believe to be double punishment for a single indivisible transaction wherein an addict is in possession of a narcotic.

Section 654, Penal Code,* while it speaks in the singular of an act or omission, has not been construed so narrowly, and has been applied in such manner as to accomplish its benign purpose of punishing a wrongdoer but once for a single wrong consisting of a combination of immediately related acts. The questions involved in application of section 654 to a given case are distinct from those of former jeopardy and included offenses. (*People* v. *Kehoe,* 33 Cal.2d 711, 713 [204 P.2d 321].) *People* v. *Clemett,* 208 Cal. 142, 144 [280 P. 681], says: "As early as *People* v. *Shotwell,* 27 Cal. 394, and *People* v. *Frank,* 28 Cal. 507, it was held that co-operative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted as one offense." At page 145: "That the rule announced in said earlier decisions is the settled law of this state is confirmed by many subsequent cases." *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501], quotes with approval and applies the foregoing language. *People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5], says: "Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654. Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts."

---

*Pen. Code, § 654: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

*People* v. *Tenney*, 162 Cal.App.2d 458, 462 [328 P.2d 254] (hearing denied), quotes *People* v. *Branch*, 119 Cal.App.2d 490, 495 [260 P.2d 27], as follows: "In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made." That we have at bar a single indivisible transaction, or "co-operative acts constituting but one offense when committed by the same person at the same time" seems clear from the record.

Alerted by somewhat suspicious movements of an automobile occupied by defendant Garcia and his codefendants Ayala and Contreras, Police Officer Woodring "staked out" the vehicle which was parked in a service station. The three occupants went into the rest room where they remained for 35 minutes. They came out together and drove off. The officer followed, clocked their speed at 53 miles in a 35-mile zone and stopped them. All three got out of the car. Asked if they had been drinking, all said they had been drinking beer. Woodring saw Garcia remove an article from his left pants pocket, make a backward throwing motion with his left arm, and Sergeant Hoiten picked up a Pall Mall cigarette package which contained heroin and an eye dropper. Search revealed in Ayala's pocket a paper match book with a hypodermic needle in it. This was on November 26, 1957. The three men were arrested and on the next day one D. La Penna, of the narcotic detail of Los Angeles County sheriff's office, filed in the municipal court of Alhambra Judicial District a complaint charging appellant with a misdemeanor committed on November 26, 1957, a violation of section 11721, Health and Safety Code, namely, addiction to unlawful use of narcotics. On the same day La Penna filed in the same court a complaint charging appellant with a felony committed on November 26, 1957, a violation of section 11500, Health and Safety Code, possession of narcotics. On December 12th appellant was tried upon the misdemeanor charge, found guilty and sentenced to 180 days in jail; commitment was issued. At that trial the witnesses were Officer Thomas E. Woodring, Officer Stanley G. Fletcher and Charles Avila; the heroin and paraphernalia taken from the three men at the time of arrest on the 26th were introduced in evidence. On December 16th a preliminary hearing was had upon the felony charge and Woodring, Fletcher, Sergeant Hoiten and Officer Klein (a forensic chem-

ist) testified; the same exhibits were received in evidence which had been received in the misdemeanor trial and appellant was held to answer in the superior court. When that trial was reached he entered a plea of former jeopardy and it was stipulated that defendant "be deemed to have testified if he was called and sworn he would testify that the prosecution for the narcotic addiction as reflected in that docket arose out of an arrest in this case involving the possession of heroin." There was no evidence to the contrary. The same exhibits were placed in evidence and the case was submitted upon the preliminary transcript plus the stipulation just mentioned and a transcript of the docket of the Alhambra Municipal Court in the misdemeanor case. Officer Woodring testified that while the three men were in the rest room he suspected a felony was in progress: "I didn't feel that they were in there to do things that people normally do in restrooms." The magistrate at the close of the preliminary hearing in the felony case said: "Well, as to Ayala, he had paraphernalia in his presence which is ordinarily used by heroin users. He is found in the immediate presence of someone who has heroin in his possession and also has a kit. He also spent 45 minutes, which up to now is unaccounted for—or 35 minutes, excuse me, in a men's toilet, and although we didn't have any expert testimony on the subject matter, I believe that there is a reasonable inference that they were there for something other than washing their hands." After conviction in the superior court and upon the hearing of application for probation the subject of addiction was discussed but probation was denied.

Certainly the possession and the addiction were contemporaneous in this instance. The addiction conviction rested upon the incidents above recited, not some earlier or later episode. It is not necessary to the application of section 654, Penal Code, that the one act be an integral part of the other. There need be only "co-operative acts constituting but one offense . . . committed by the same person at the same time [which] when combined, charge but one crime. . . ." What is a single offense is to be determined under *People* v. *Brown, supra,* 49 Cal.2d 577, 591, by solving the question whether "a course of conduct" violating more than one statute "comprised a divisible transaction." I think it highly technical to hold that this addiction and possession form parts of a severable transaction. There is nothing in the record to raise an inference that defendant's possession had any purpose other than satisfying his craving for the drug. For aught

that appears he is a victim of narcotics, not a "pusher." In reality this appellant offended society but once on this occasion, and he should not be punished for a misdemeanor and then punished again for a felony where both convictions are based upon the one episode, a single indivisible series of events. The instant situation is factually analogous to *People* v. *Roberts, supra,* 40 Cal.2d 483, 491; *People* v. *Branch, supra,* 119 Cal.App.2d 490, 496, and *People* v. *Tenney, supra,* 162 Cal.App.2d 458, 463-464, in which it was held that possession and transportation for purpose of sale and the sale itself are but a single offense and punishable but once.

Section 654, Penal Code, not only forbids double punishment but also precludes a second prosecution in a situation such as we have here; it says: "[A]n acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ." Appellant was convicted and sentenced upon the misdemeanor charge and it was thereafter unlawful to prosecute him in this felony case.

The judgment at bar should be reversed with instructions to dismiss the information.

A petition for a rehearing was denied February 2, 1959. Ashburn, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied March 4, 1959.