[Crim. No. 7913.   Second Dist., Div. Three.   Apr. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN
RODRIGUEZ, Defendant and Appellant.

John H. Marshall and Harold J. Ackerman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James and Gilbert F. Nelson, Assistant Attorneys General, for Plaintiff and Respondent.

FILES, J.—Defendant was convicted, after a court trial, of a sale of heroin in violation of Health and Safety Code, section 11501, and illegal possession in violation of Health and Safety Code, section 11500, with one prior conviction under section 11500. This appeal is from the judgment.

The evidence on which defendant was convicted may be summarized as follows:

At about 6:15 p. m. on February 8, 1961, three deputy sheriffs accompanied Ronald Penn to the vicinity of defendant's home. The officers searched Penn to be sure he possessed no narcotics and supplied him with marked currency. The officer who testified observed Penn proceed down an alley and pass through a gate into the yard directly behind defendant's house. The officer then moved to another vantage point, 30 or 35 feet distant, from which he could observe defendant's back porch. He lost sight of Penn for a few

seconds during this change of positions, but resumed his surveillance as Penn approached the porch. Penn called to defendant, who came outside and conferred with Penn, after which Penn retraced his route back through the gate and down the alley to meet the officers. After remaining with the officers about eight or nine minutes, Penn again went to defendant's porch by the same route, while being observed by the officer in the same way as on the first trip. This time defendant joined Penn near the back porch and the two of them walked back towards the alley so that the officer could not see them from his second vantage point. They were out of sight for an interval first described as "a minute or so," and again as "several minutes." The officer then saw defendant return to his back porch alone. The officer then moved back to the alley where he saw Penn walk out the rear gate. Penn rejoined the officers and delivered to them 10 capsules of heroin. He no longer had the marked money.

The officers then went to defendant's home, arrested him, and conducted a search. They found two narcotic "outfits," a box of gelatin capsules, two broken capsules, and a white rubber sheath. Each "outfit" contained a spoon, an eye-dropper and a hypodermic needle. The rubber sheath had a hole in the end of it. This kind of container is commonly used to carry loose, uncut heroin, and the hole is made for passing out the heroin as it is mixed with milk sugar for dispensing to addicts. Subsequent examination by a chemist showed that this article contained traces of heroin.

The officers were unable to find the marked money. Defendant admitted to the officers that all of the above-mentioned articles were his and that he had used one of the "outfits" earlier that day. The officer further testified that he had asked defendant if another person had gone into his house about 20 or 25 minutes prior to the arrest; that defendant had replied that Penn had come in and asked for heroin, that a third person who was present gave Penn the narcotics, and Penn handed the money to defendant, who handed it to the third person. The officer testified that defendant had refused to answer who the third person was or when he left the house.

At the trial defendant testified that on the day in question between 6 and 7:30 p. m. he did not go out into his back porch or back yard, and that no one came to his residence until the officers arrived at about 7:30 p. m.

In rebuttal the prosecution produced a court reporter who read some testimony given by defendant at a trial in the

municipal court. The substance of defendant's testimony there was that on February 8, 1961, about half an hour before the officers came, a man had come to the door and had asked for narcotics.

Defendant was then recalled for further cross-examination and asked again if he did see somebody about a half hour before the officers arrived. His answer was, "Maybe half an hour, maybe an hour."

Penn was not called by either side.

■ Defendant contends that the evidence is insufficient to support a conviction for the sale because Penn was not under constant observation by the officers and hence could have acquired the heroin from another source. It appears, however, that Penn was under constant observation at all times except when on defendant's premises. Penn was out of sight for a few seconds on four occasions when the officer moved from one vantage point to the other, but on each occasion Penn was apparently moving without incident along the route between the rear porch and the alley gate. The only other time Penn was out of sight was during his brief meeting with defendant in the back yard. The officer saw no one else in the vicinity. Defendant himself supplied evidence that no one else had come to the house.

The cases relied upon by defendant involve gaps in the evidence which do not exist here. Thus in *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041], the operator drove off in a car and remained away for an hour and a half, during which he could have obtained narcotics from any source. In *People* v. *Lawrence,* 168 Cal.App.2d 510 [336 P.2d 189], the operator rode in a taxicab and occupied an apartment with two other persons, making it possible for him to have acquired narcotics from the driver or from either of the other two persons. In *People* v. *Morgan,* 157 Cal.App.2d 756 [321 P.2d 873], the operator was out of sight for a "brief interval," the length of which is not disclosed in the opinion. On two occasions the officer in that case remained in the auto and apparently did not observe the operator between the auto and the apartment where the narcotic was supposedly obtained. On the third occasion there was no testimony as to whether the operator contacted anyone while under observation.

We conclude that in the case at bench the observation of the officers, taken together with defendant's own testimony, along with the possession of the typical rubber container and capsules, constitute sufficient evidence to support the trial court's

finding that the sale was established beyond a reasonable doubt. (Cf. *People* v. *Gonzales,* 186 Cal.App.2d 79 [8 Cal. Rptr. 704] ; *People* v. *Castedy,* 194 Cal.App.2d 763 [15 Cal. Rptr. 413] ; *People* v. *Sauceda,* 199 Cal.App.2d 47 [18 Cal. Rptr. 452].)

Defendant does not challenge the sufficiency of the evidence of illegal possession. Defendant testified that the "outfits" belonged to him. It was stipulated that a chemist would testify that some of the articles contained heroin.

Defendant argues that he was denied due process of law because the prosecution failed to call Penn as a witness. No authority is cited supporting this theory. The record does not show that defendant was in any way prevented from calling Penn if defendant had desired to do so. There is no general requirement that the prosecutor call as a witness every person who may have material information. (*People* v. *Wilkins,* 178 Cal.App.2d 242 [2 Cal.Rptr. 908] ; see *People* v. *Kiihoa,* 53 Cal.2d 748, 752 [349 P.2d 673].) There are inevitably occasions when the prosecutor believes that a person who was an eyewitness, or even a participant, is so lacking in mental or moral qualification that his testimony would add nothing in a search for the truth. There is no suggestion in this case that the prosecution did anything, either by delaying the trial (as in *People* v. *Kiihoa,* 53 Cal.2d 748 [349 P.2d 673]) or otherwise, to impede defendant's opportunity to call Penn as a witness if defendant so desired.

In cross-examining the arresting officer, defendant elicited the fact that at the preliminary hearing this witness was asked, "Q. Do you know the present whereabouts of Ronald Penn," and he answered, "No, sir; I do not." At the trial the arresting officer was asked the same question and he responded that he had learned "last Friday" that Penn was then a prisoner at Chino State Prison. There is no evidence that either answer was untrue. There is no evidence that defendant or his counsel did not know at all times where Penn was to be found.

Defendant's counsel complains that in this situation the trial court "should not sit idly by." This criticism is misdirected. Of all the people in the courtroom, defendant alone knew with certainty whether Penn had purchased heroin from him as charged by the prosecution. Defendant, better than anyone else, knew whether Penn's presence would be helpful to his defense. If, as counsel now supposes, Penn was in Chino, he was but a two-hour automobile ride from the

courthouse, and the court had discretion to order his presence if a request had been made under Penal Code, section 2621. No request was made by counsel. This court must conclude not that defendant's trial tactics were inept, but that his brief is disingenuous.

■ Defendant argues that the trial court erred in refusing and overruling his "plea of double jeopardy upon the grounds of unjust harassment."

At the beginning of the trial defendant moved to withdraw the plea of not guilty for the purpose of entering a second plea of once in jeopardy. In support of the motion counsel asserted that when defendant was arrested on February 8, 1961, he was arrested and booked for violation of section 11721 of the Health and Safety Code and on April 3, 1961, was tried in the municipal court and convicted of that offense, that is, of use of or addiction to the use of narcotics. The motion was denied. Defendant urged the same point on his motion for new trial, which was also denied. What defendant means by "double jeopardy" is that he should not have been prosecuted for the felonies of sale and possession after having been convicted on a misdemeanor charge of addiction when the evidence of addiction was discovered at the same time when defendant was arrested for sale and possession. Defendant relies on Penal Code, section 654, but he cites no decided case which has adopted his contention. *People* v. *Ayala,* 167 Cal.App.2d 49 [334 P.2d 61], decided that a conviction for violation of section 11721 does not bar conviction and punishment for violation of section 11500 even though the possession and addiction are contemporaneous. In a dissenting opinion Justice Ashburn presented the contrary view, but the Supreme Court denied a hearing. We therefore accept the *Ayala* decision as the prevailing law.

Defendant would distinguish *Ayala,* pointing out that it concerns double punishment, while defendant here objects to double prosecution. Defendant asserts in his brief that the state has improperly harassed him by dividing its case. The circumstances do not justify that conclusion. Violation of section 11721 is a misdemeanor, subject to prosecution only in the municipal court. (Pen. Code, § 1462; *In re Williamson,* 43 Cal.2d 651 [276 P.2d 593].) Violation of section 11500 is a felony, and the case must be tried in superior court. (Cal. Const., art. VI, § 5.) Since the law provides that defendant may be punished for both offenses, and no

single court has jurisdiction over both offenses, the legal objective can only be accomplished by successive trials.

Finally, defendant argues that the two convictions, one for possession and the other for sale, cannot stand where the possession is incident to the sale. The facts do not support defendant's theory. The officers entered defendant's home after the sale and there found heroin in defendant's possession. The quantity found is not disclosed. The evidence was received in the form of a stipulation that certain exhibits "contained heroin." This possession of other heroin after the sale is not incident to the sale. (*People* v. *Tenney,* 162 Cal.App.2d 458, 463 [328 P.2d 254].)

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.