[Civ. No. 36217. Second Dist., Div. Five. Oct. 5, 1971.]

EDWARD F. MARTIN, Plaintiff and Respondent, v.
WILLIAM HERBERT HALL, Defendant and Appellant.

## COUNSEL

William Herbert Hall, in pro. per., and Leon Mayer for Defendant and Appellant.

Kurlander, Solomon & Hart, William A. Kurlander, Stephen H. Silver, Stephen Warren Solomon and Charles R. Hart, Jr., for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—A jury decided that defendant, an attorney, committed professional malpractice when, in 1963, he unsuccessfully defended plaintiff on a felony charge. As a result of his conviction plaintiff was imprisoned for about four years. Damages were fixed at $20,000. Defendant appeals.

### FACTS

During the night of November 25, 1962, plaintiff wanted to speak to his estranged wife, Wilma, over the telephone. She was then visiting Mr. and Mrs. Manuel D. Nelson at their home in the City of Gardena. Mr. Nelson, who took plaintiff's call, told him that Wilma did not want to talk to him. Plaintiff said: "You can't stop me from talking to my wife . . . brother, you are dead. . . . I have a gun and I am coming over to kill you." At about 2 a.m. plaintiff fired eight shots in front of the Nelson home. Later that night plaintiff was arrested in his car and found in possession of a pistol. He was then charged with three misdemeanors: disturbing the peace (Pen. Code, § 415), carrying a concealed weapon within a vehicle (Pen. Code, § 12025), and simple assault (Pen. Code, § 240), the named victim being Mr. Nelson. On November 27, 1962, plaintiff, without counsel, pleaded guilty to disturbing the peace and the weapons charge. He pleaded not guilty to the assault. He was sentenced to 30 days in the county jail which he served.

It appears from the record that plaintiff was positively identified by his wife. Mr. Nelson had also seen the person who had fired the shots. Although he could not identify plaintiff, he could "swear" that it was he.

Sometime after plaintiff had pleaded guilty in the municipal court and started to serve his sentence, it was determined that three slugs found in the attached garage of the Nelson home had been fired from a pistol of the make and caliber of that found on plaintiff. There appears to have been no physical evidence that the other five shots ever hit any part of the house.

A new accusatory pleading charging plaintiff with the felonies of assault with a deadly weapon (Pen. Code, § 245) and discharging a firearm into an inhabited dwelling (Pen. Code, § 246) was then filed.[1] The assault count, still pending in the municipal court, was dismissed in furtherance of justice.

Plaintiff then retained defendant as his attorney. Defendant was aware of the misdemeanor proceedings which had taken place. Plaintiff suggested that double jeopardy would be a defense to the felony charges. According to plaintiff defendant agreed, but at no time during the felony prosecution did he attempt to utilize the misdemeanor convictions as a total or partial defense, affecting either the question of guilt or the permissible punishment.

Defendant's strategy, to the extent that he was permitted to explain it, was, to put it bluntly, a bargain with the trial court. The proposed mechanics for its execution appear only dimly in the record. The felony charges were submitted on the transcript of the preliminary hearing and plaintiff was promptly found guilty. Apparently either before or after that finding, defendant arranged with the trial judge that the criminal proceedings would be either suspended or terminated and that plaintiff would be civilly committed for the purpose of receiving psychiatric care. Unfortunately, on the day of "sentence," when this bargain was to be consummated, plaintiff did not appear. When he finally did show up sometime later, it came to light that the reason for the earlier failure to appear had been his rearrest on a charge of drunk driving. In the malpractice action defendant offered to prove that at that juncture in the felony case the trial court considered itself no longer bound by the terms of the bargain and therefore felt free to and did sentence plaintiff to concurrent prison terms of both counts.

Since sentencing the defendant on the section 246 count was a clear vio-

---

[1]The alleged victims of the felonies were Mr. and Mrs. Nelson and Wilma. Each felony was charged as a single count.

lation of the prohibition against multiple punishment contained in section 654 of the Penal Code (*Neal* v. *State of California,* 55 Cal.2d 11, 18-21 [9 Cal.Rptr. 607, 357 P.2d 839]), a Marin County Superior Court on plaintiff's habeas corpus petition, on October 7, 1964, vacated the sentence on that count.

In October 1964 plaintiff petitioned the sentencing court for a writ of error *coram nobis,* raising some of the defenses which, in this malpractice action, he claims defendant should have raised in the first place. The petition was denied, and an appeal to this court resulted in an unpublished opinion by division three, affirming the order of denial. The court did not pass on the merits as it held that the proper remedy was habeas corpus. Defendant then petitioned for habeas corpus relief and was successful. In an unpublished opinion, filed March 9, 1967, the same division held that *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], compelled the granting of the writ because plaintiff had been subjected to multiple prosecutions in violation of section 654 of the Penal Code.[2] Since *Kellett* was decided three years after plaintiff's conviction, the opinion necessarily assumed that the decision was to be retroactively applied.[3]

Plaintiff's claim of malpractice rests on the proposition that defendant should have utilized the misdemeanor prosecution and punishment for the purpose of causing a dismissal of the felony prosecution or, at least, preventing punishment after conviction. He relies in equal part on the constitutional and statutory prohibition against double jeopardy (U.S. Const., Amend. V; Cal. Const., art. I, § 13; implemented by Pen. Code, § 1023) and the statutory prohibitions against multiple punishment and multiple prosecution. (Pen. Code, § 654.)

At the trial below the parties offered conflicting expert testimony on the question of whether defendant had acted with due care in not asserting any of the three mentioned defenses.

---

[2]In connection with the *coram nobis* appeal defendant had filed a declaration in this court. In it he stated that when he represented plaintiff "he was fully aware of the fact that preceding the filing of the felony complaint and information appellant had been charged with misdemeanors in the Municipal Court. . ." and that he had pleaded guilty to violations of sections 415 and 12025 of the Penal Code. He further stated that because at least one additional victim was named in the felony charges, he did not believe that the misdemeanor convictions could be utilized to plaintiff's benefit.

[3]Defendant makes the startling argument that the appellate court was in error when it granted plaintiff's habeas corpus petition in 1967. He argues that *Kellett* is not retroactive. This may be true, but what of it? If it was defendant's malpractice which sent plaintiff to prison, it is hard to see how he is in a position to argue that plaintiff did not stay there long enough.

## CONTENTS

Defendant raises many issues on this appeal, not all of which need be discussed. Suffice it to say, for present purposes, that one of the points he makes is that neither a plea of double jeopardy, nor reliance on the dual prohibitions of section 654 would have been successful at the time he represented plaintiff. In other words, he claims that even if due care had demanded that he raise one or all of these defenses,[4] his negligence caused no harm, because none would have prevailed.

## DISCUSSION

At the trial of this case there were two distinct issues: (1) whether defendant was negligent; and (2) whether, had he interposed the three defenses, a more favorable result would have been achieved. (*Kilmer* v. *Carter,* 274 Cal.App.2d 81, 88 [78 Cal.Rptr. 800]; *Campbell* v. *Magana,* 184 Cal.App.2d 751, 754-757 [8 Cal.Rptr. 32].) The first issue was properly submitted to the jury on conflicting expert testimony. (*Starr* v. *Mooslin,* 14 Cal.App.3d 988, 997-999 [92 Cal.Rptr. 583].) On the second issue the parties apparently decided to play Russian roulette and failed to request appropriate rulings from the trial court. In People v. Martin, the decision on all three defenses would have presented nothing but a question of law for the court. The trial court, in the instant case, therefore should have ruled how the court in the criminal case would have resolved these legal questions. If, after the establishment of the basic facts, it became evident that, as a matter of law, a particular defense could not have prevailed, any evidence on whether or not defendant committed malpractice in not raising it became academic.[5] At the very least it was the court's duty to instruct the jury that such malpractice caused the defendant no harm. Conversely, if in its view a particular defense would have prevailed, the trial court should have so advised the jury, leaving to that body only the issues of negligence and damages. In other words, under the peculiar facts of this case, the question of causation was one of law.[6] Instead of proceeding in this

[4]Strictly speaking, reliance on the multiple punishment aspect of section 654 is not a defense to a conviction, but merely prevents punishment. (*People* v. *McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].) However, for the sake of simplicity, we shall refer to such reliance as a defense.

[5]Could a physician be found liable for malpractice in not performing an operation, if a later autopsy shows that, without doubt, it could have helped the patient? (Cf. *Deckard* v. *Sorenson,* 177 Cal.App.2d 305 [2 Cal.Rptr. 121].)

[6]This statement is true even though, as we shall see, the applicability of the prohibition against multiple punishment may have depended on a finding of fact which was properly for the jury. That finding has to do with the number of victims whom plaintiff may have assaulted.

fashion, the trial court in effect left it up to the attorneys to argue to the jury—and to the jury to decide—what the legal effect would have been, in 1963, had defendant tried to take some advantage of the municipal court proceedings. Thus, for example, counsel for plaintiff argued freely to the jury that disturbing the peace was necessarily included in a violation of section 246 of the Penal Code.[7]

While the cases which discuss an appellant's right to complain about the trial court's failure to instruct, where no instruction was requested, may be very hard to reconcile,[8] it appears to be well established that it is reviewable error to submit to the jury an issue of law as a question of fact. (*Lysick v. Walcom,* 258 Cal.App.2d 136, 158 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) **(3)** By claiming that none of the three defenses he did not raise would have helped plaintiff in the criminal action, defendant is, in effect, urging that no factual issue with respect to causation existed; put differently, he is arguing that the evidence is insufficient to support the verdict. This he may do in spite of his failure to move for a nonsuit, a directed verdict or appropriate instructions. (*First National Bank of Monrovia* v. *Maryland Casualty Company,* 162 Cal. 61, 72 [121 P. 321]; *Gapin* v. *City of Los Angeles,* 34 Cal.App.2d 660, 662 [94 P.2d 359]; *Roy Tong* v. *Sun Realty Co.,* 128 Cal.App. 261 [17 P.2d 759].)[9]

It goes without saying that defendant has nothing to complain about if the court should have instructed the jury that, given negligence in not raising a particular defense, causation was established as a matter of law. On the other hand, if with respect to any such defense he was entitled to an instruction that even if asserted, the defense would have been found

---

[7]". . . Everyone that I heard testify up here agreed that shooting or disturbing the peace is defined or comes within the definition of shooting at a house, and an inhabited dwelling, and it comes within the offense of shooting at an inhabited dwelling, that is, you can't shoot at a dwelling that is inhabited without disturbing the peace.

"Doesn't matter whether one is more serious than the other. And once it necessarily is included, that is, once disturbing the peace is necessarily included in Section 246 of the Penal Code, and you are sentenced on the disturbing the peace, jeopardy attaches.

"That is the law. That is what Mr. Hall's duty was, to raise. It was a necessarily included offense.

"Section 1023 of the Penal Code applies and that defense should have been raised. The fact that disturbing the peace is a much more innocuous thing than 246 has nothing to do with our problems."

[8]Compare for example, *Dorsic* v. *Kurtin,* 19 Cal.App.3d 226, at page 239 [96 Cal.Rptr. 528] with *Lysick* v. *Walcom,* 258 Cal.App.2d 136, at pages 157-158 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].

[9]Defendant, of course, is asking us to hold that none of the three defenses would have been successful, if asserted. As will be seen we have come to the conclusion that he is only partially correct.

unavailing, we must assess the prejudicial effect of the error of permitting an issue to go to the jury, when it should have been entirely withdrawn from its consideration.

We have come to the conclusion that the jury never should have been turned loose on the double jeopardy issue.

First of all, no sensible argument can be made that either disturbing the peace or carrying a concealed weapon within a vehicle are included in the crime of assault with a deadly weapon. ■ It so happens that the particular assault or assaults charged against plaintiff, under the particular circumstances of this case, did involve a disturbance of the peace; but ". . . before a lesser offense can be said to constitute a necessary part of the greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense." (*People v. Francis,* 71 Cal.2d 66, 73 [75 Cal.Rptr. 199, 450 P.2d 591], citing *People v. Thomas,* 58 Cal.2d 121, 128 [23 Cal.Rptr. 161, 373 P.2d 97].)

■ Turning to count II of the information against plaintiff, no case has been found declaring specifically whether disturbing the peace (Pen. Code, § 415) is included in the crime of discharging a firearm at an inhabited dwelling, house, or occupied building (Pen. Code, § 246), and whether a double jeopardy plea would thus have been good as to the section 246 count. (*People v. Francis, supra,* 71 Cal.2d 66, 73.) We hold that double jeopardy would *not* have been a good defense and, for want of better authority, must assume that it would not have been one in 1963.

Section 415 is a grab bag of all kinds of prohibitions against unneighborly conduct. About the only ones with which the prosecutor failed to charge plaintiff in the municipal court, are running a horse race or firing a gun in an unincorporated town. Plaintiff's argument is, of course, that one who violates section 246 of the Penal Code must necessarily violate that portion of section 415 which makes it a misdemeanor to disturb "the peace or quiet of any neighborhood or person, by loud or unusual noise, . . ." and that the portion of section 415 of which he was convicted was that particular prohibition. (Cf. *People v. Greer,* 30 Cal.2d 589, 597-598 [184 P. 2d 512].)

However, it seems clear that section 246 can be violated without thus disturbing the peace. It has been held that the phrase "inhabited dwelling house" in section 246 ". . . has the same meaning in section 246 as it has in section 460 of the same code, defining first degree burglary. It is settled that, in the burglary section, the building is 'inhabited' if a person resides therein even though it be temporarily unoccupied. (*People v. Valdez*

(1962) 203 Cal.App.2d 559, 563 [21 Cal.Rptr. 764].)" (*People* v. *Chavira*, 3 Cal.App.3d 988, 992 [83 Cal.Rptr. 851].) Thus, since a miner's shack in the middle of a desert can hardly be described as part of a neighborhood, section 246 can be violated by pumping bullets into such a home, even if it is temporarily unoccupied and no person's peace is disturbed.

If we are right so far, it was obviously prejudicial to let the jury decide whether or not defendant should have raised the issue of double jeopardy. That particular legal concept was repeatedly emphasized in plaintiff's counsel's argument, and, one may safely guess, it had more appeal to a lay jury than the esoteric discussions about the various aspects of section 654 of the Penal Code.

The submission of the double jeopardy issue to the jury was prejudicial even if the court should have instructed the jury that reliance on section 654 would have been successful as a matter of law. As noted there was conflicting expert testimony on the issue whether defendant was negligent in not relying on that section. Thus, had the jury never been permitted to find for plaintiff on the double jeopardy issue, it easily could have returned a defense verdict on the theory that defendant was not negligent in failing to rely on section 654, even though such reliance would, at least, have prevented plaintiff from being punished on either of the felony counts.

In order to take as much of the guess work out of the retrial as we appropriately may, we now turn to a discussion of the applicability of the dual prohibitions of section 654 to the situation faced by plaintiff after he had pleaded guilty and started to serve his sentence on the misdemeanor counts.

■ We first turn to the prohibition against multiple prosecution. At the threshold of our discussion we must decide whether the question is what a trial court would have ruled, had defendant put forward a claim that the felony prosecution violated that prohibition, or what our highest tribunal would have declared to be the law. We think that practical necessity compels the latter inquiry. While some trial courts undoubtedly might have felt that *People* v. *Rodriguez,* 202 Cal.App.2d 191, 196-197 [20 Cal.Rptr. 556] made the defense inapplicable, others might have distinguished the case. *Rodriguez* denied that in that case there had been an impermissible multiple prosecution, reasoning that the first conviction was for a misdemeanor which the superior court had no jurisdiction to try.[10] On the other

---

[10]*Rodriguez* was specifically disapproved in *Kellett* where the Supreme Court cited *People* v. *Bundte,* 87 Cal.App.2d 735, 744 [197 P.2d 823], for the proposition that section 954 of the Penal Code authorizes misdemeanors and felonies falling within the ambit of that section to be joined in a single superior court prosecution. (*Kellett* v. *Superior Court,* 63 Cal.2d at p. 826, fn. 3 [48 Cal.Rptr. 366, 409 P.2d 206].) The

hand, the *Rodriguez* court emphasized that the defendant's crimes were such that he could be punished for both.[11] A trial court, in People v. Martin, might have felt that *Rodriguez* was distinguishable on that basis. We simply have no way of ever knowing what would have happened at the trial level.

The only possible way of solving the riddle is, therefore, to determine—hypothetically to be sure—what the Supreme Court would have held. Here we are on much safer ground. After broadly hinting in *Neal* v. *State of California*, 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839] that "double prosecution may be precluded even when double punishment is permissible" it proceeded to so hold in *Kellett*. We have no reason to suppose that the result in a hypothetical Martin v. Superior Court would have been different.

There is, however, one caveat. It finds its roots in *Kellett* itself, which states that its prohibition is not applicable to cases "in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted." (*Kellett* v. *Superior Court, supra,* 63 Cal.2d at p. 828.) In such a case multiple prosecutions are not a "waste and harassment."

There is testimony in the record that what induced the filing of the felony charge was the report connecting the three slugs found in the garage to plaintiff's gun. It is not explained, however, why the district attorney's office apparently felt that it could prove the disturbance of the peace charge without this physical evidence. In any event, the question whether or not the particular circumstances of this case made the exception to the *Kellett* rule applicable, will have to be canvassed at the retrial.

■ We now consider the multiple punishment problem. It must be conceded that even today there seems to be no case which actually considers the question whether the rule against multiple punishment applies with the same force where the first punishment was meted out in an inferior court. Yet the time during which defendant did not even raise the problem is neatly bracketed by two decisions which assume, apparently as a matter of course, that inferior court punishment for a crime which is part of an indivisible course of conduct, bars later superior court punishment or prosecution for other crimes that are part thereof. The first case is *People* v. *Ayala,* 167 Cal.App.2d 49 [334 P.2d 61] where a divided court rejected, only on

---

Supreme Court was, of course, free to read *Bundte* as broadly as it wished, but the actual facts of the case make it not nearly as radical a holding as *Kellett*. As the *Bundte* court pointed out on page 745 of the opinion, the reason why it thought that the superior court had jurisdiction to try the misdemeanor there involved was that it carried a penalty which no inferior court in the county in question—Mendocino—had jurisdiction to impose.

[11]Of course, since *Kellett* we have known that it is no answer to a claim of multiple prosecution, that double punishment is permissible.

the basis that the conduct was divisible, a claim that municipal court punishment for a violation of section 11721 of the Health and Safety Code, barred later superior court punishment for possession of heroin. Neither the majority nor the dissent adverted to the inferior-superior court problem.

The later case is *People* v. *Manago*, 230 Cal.App.2d 645 [41 Cal.Rptr. 260], where the defendant successfully utilized a municipal court conviction for violating a San Francisco ordinance to reverse a superior court conviction of burglary. Although *Manago* is, technically, a multiple prosecution case, it is significant that the court looked "to the multiple punishment cases for guidance" and, as the *Ayala* court before it, was not in the least troubled by the fact that the first prosecution had been in an inferior court.

We therefore hold that it was the law, as of early 1963, that the prohibition against multiple punishment applied even if the first punishment was suffered in an inferior court.

Defendant insists that the prohibition against multiple punishment was not applicable in this case because different victims were named in the superior court. The municipal court complaint for disturbing the peace was signed by plaintiff's wife and accused him of disturbing the peace of the neighborhood of 1648 W. 169th Street, Gardena "and the peace and quiet of this declarant . . . *and other persons* then and there being present." (Italics added.) Plaintiff claims that this includes Mr. and Mrs. Nelson, who with Wilma, were named as the three victims of the felonious assault count in the superior court.[12]

While we have not hesitated in holding—subject to the caveat—that at the retrial the court should instruct the jury that reliance on the prohibition against multiple prosecution contained in section 654 would have been successful, we do not think it appropriate to discuss the far more difficult problem posed by the number of victims in connection with the prohibition against multiple punishment if a holding on that point is not necessary to our decision. While the People of the State of California are hardly affected by our holding concerning the law with respect to multiple prosecution in early 1963, the question of multiple punishment for crimes involving several victims is a live issue today and should not be decided in this civil case, to which the People are not a party, if we can avoid doing so.[13]

[12]They were also named as "victims" in the court charging a violation of section 246 of the Penal Code. Query, whether in view of the fact that the inhabited dwelling which a defendant shoots up need not be occupied at the time of the shooting, section 246 is a crime that has a victim in the ordinary sense of the word.

[13]The trouble is that much of the law in this area has not yet been written. While *Neal* v. *State of California, supra*, 55 Cal.2d at pages 20-21 contained broad language which, seemingly, permitted multiple punishment whenever there were multiple vic-

While such avoidance may result in some uncertainty as to the law at the retrial of this case, it seems clear to us that it is better to run the risk of possible error at that retrial, than to decide a question of interest to the People without their being heard.

We need not decide the question because defendant is mistaken in assuming, as a matter of law, that there were three victims to the felony charges. As far as the violation of section 246 is concerned, the crime does not involve victims in the ordinary sense. Who is the victim when a defendant pumps bullets into an inhabited, but temporarily vacant dwelling? In any event, it seems perfectly clear that just as plaintiff disturbed the peace only once, regardless of how many persons heard the shots, he violated section 246 only once, however many persons were in the house at the time of the shooting.[14]

Adverting to section 245 a more difficult problem is presented and it is one which, for the reasons stated, we avoid deciding on this appeal. Plaintiff may well be correct in arguing that since the peace of the three alleged assault victims was disturbed, regardless of who signed the misdemeanor complaint, no new victims were alleged in the information. On the other hand it may well be the law that one should not look to the victims of a charge of disturbing the peace to determine whether additional victims are named in a felonious assault charge, comprising the same incident. The basis for such an argument could be that, as we have stated, regardless of the number of persons disturbed by his conduct, plaintiff violated section 415 only once and was never exposed to a misdemeanor conviction on more than one count.[15]

These are all fascinating questions of criminal law which will have to be resolved someday. Suffice it for the present case to state that defendant is in no position to argue as an immutable truth that there were three victims

tims. *People* v. *Bauer,* 1 Cal.3d 368, 377-378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] confined *Neal* to crimes of violence, as distinguished from crimes against property interests of several victims. Problems in application derive from various factors; for example, it is not always easy to determine whether a particular crime is one of violence; further, there are certain crimes which are committed only once, even though they result in violent injury or even death involving several victims (see *People* v. *Lobaugh,* 18 Cal.App.3d 75, 79-80 [95 Cal.Rptr. 547]); finally some crimes have no victims at all. It seems clear that the principles announced in *Neal* and *Bauer* only scratch the surface of the problems which are sure to arise in the future.

[14]We do not consider the question whether each shot fired at the house could have been charged as a separate violation. The "victims" would have been the same with respect to each count and, clearly, each such count would have been part of the same indivisible conduct, which also included the violation of section 415.

[15]Again, we do not discuss the possibility that each shot was a separate disturbance of the peace, for again each shot disturbed the identical "victims."

to the assault. Quite apart from the fact that the physical evidence—or rather the apparent lack thereof—indicated very strongly that plaintiff merely intended to frighten someone and thus was not guilty of assault at all (*People* v. *Coffey*, 67 Cal.2d 204, at pp. 221-222 [60 Cal.Rptr. 457, 430 P.2d 15]) or else was an extremely poor shot, what we do know about the threats which preceded the shooting, indicates rather strongly that the only intended victim was Mr. Nelson. It seems, therefore, that even under the standards concerning intent announced in *People* v. *Rocha*, 3 Cal.3d 893, 897-900 [92 Cal.Rptr. 172, 479 P.2d 372] and *People* v. *Hood*, 1 Cal. 3d 444, 452-459 [82 Cal.Rptr. 618, 462 P.2d 370], the defense in People v. Martin, had it chosen to really try the case, had an excellent chance of creating a reasonable doubt that plaintiff assaulted anyone except Mr. Nelson.[16]

It appears, therefore, that at the retrial it will be primarily a question of fact whether there were multiple victims of the assault. The court will, of course, have to instruct the jury concerning the availability of the prohibition against multiple punishment, in the event it is established that there was more than one victim.

Almost obscured by the failure to raise defenses which, on the present record, could have resulted at least in no additional punishment at the superior court level, is the apparently inexcusable failure of defendant to raise the question of multiple punishment as between the two felony counts of which plaintiff was convicted. As noted, the error in sentencing plaintiff on both counts was cured by the Marin County Superior Court by an order dated October 7, 1964. Theoretically, at least, it is possible that plaintiff might have regained his freedom earlier than he actually did, had he not been serving concurrent sentences.[17] Of course, if at the retrial the plaintiff should again prevail and be awarded damages for his entire period of incarceration, this aspect of the matter becomes academic. If, however, the jury should find in defendant's favor as far as alleged negligence in doing nothing with the municipal court proceedings is concerned, plaintiff should —if tactically he cares to exercise it—be given an opportunity to prove that he would have been freed before he actually was, had he been serving a single sentence.

---

[16]It is noted that the prosecution has charged plaintiff with but one assault count, naming three victims. (See fn. 1.) We need not discuss the procedures that were open to the defense to make certain that, if 12 jurors found plaintiff guilty of an assault, they would unanimously agree concerning the identity of the victim.

[17]See *In re Wright*, 65 Cal.2d 650, 653 [56 Cal.Rptr. 110, 422 P.2d 998]. The minimum sentence for a violation of section 245 is six months. (Pen. Code, § 18a.) The two-year minimum for persons armed with a deadly weapon at the time of the offense (§ 3024, subd. (a)) probably did not apply to a violation of section 246. (*People* v. *Floyd*, 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862].)

■ One final matter is bound to arise again at the retrial: it was one of the theories of the defense that plaintiff only had himself to blame for going to prison, because of the arrangement that had been worked out with the trial court whereby he was to receive psychiatric care, rather than punishment. As noted, this disposition came to naught when plaintiff failed to show up at the time he was to be sentenced. The court's rulings prevented defendant from developing all of the facts relating to this theory. In particular he was not permitted to show what the trial judge in the felony case would have done had plaintiff appeared for sentencing when he should have and what changed the judge's mind.[18] We think this evidence is obviously relevant on the issue of damages. If this were a medical malpractice case and the defendant doctor were shown to have negligently undertaken a course of treatment of the patient, surely no one would argue that the defendant cannot attempt to prove that even the negligent treatment would have produced a better result than that actually obtained, had not the patient refused to follow advice.

The judgment is reversed.

Aiso, J., and Reppy, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 16, 1971. Sullivan, J., did not participate therein.

---

[18]We are not passing on the question whether the particular evidence defendant offered for that purpose—a transcript of the court's remarks at the time the prison sentence was imposed—was competent to prove defendant's theory. The court's ruling left no doubt that the matter could not be pursued.