[No. A033525. First Dist., Div. Three. Oct. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN EUGENE MASTERS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, the majority and concurring opinions are certified for publication with the exception of parts III, IV, and V of the majority opinion.

**COUNSEL**

Amiram J. Givon, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Dane R. Gillette and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—An information was filed charging appellant Marvin Eugene Masters with attempted murder of Derrick Ross, in violation of Penal Code[1] section 187 in count one; discharging a firearm at an occupied motor vehicle, in violation of section 246 in count two; and, assault with a deadly weapon on James Hooker, in violation of section 245, subdivision (a)(2), in count three. Enhancements were alleged in connection with each count. Masters's section 995 motion to dismiss the attempted murder count and the accompanying enhancement allegations was denied.

Pursuant to a negotiated disposition, and upon motion of the district attorney, the trial court amended the attempted murder charge in count one to allege assault with a deadly weapon, in violation of section 245, subdivision (a)(2). Masters then pleaded guilty to this charge, admitted the accompanying great bodily injury enhancement allegation (§§ 12022.7, 1203.075) and pleaded guilty to count two, a violation of section 246. Count three and the remaining enhancement allegations were dismissed upon the district attorney's motion.

Masters was sentenced to the upper term of four years on count one, a consecutive three-year term for the great bodily injury enhancement and a consecutive one-year term on count two, being one-third of the middle term.

The trial court executed a certificate of probable cause for appeal (§ 1237.5) on the issue of whether the section 654 prohibition against multiple punishment precluded the court from sentencing Masters to the one-year consecutive sentence for violation of section 246 without staying execution of that sentence. This appeal followed.

**I**

The factual basis for sentencing Masters was provided by the preliminary hearing transcript which was received into evidence pursuant to the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

stipulation of the parties. On the evening of March 24, 1985, on Interstate 580 in Oakland, Masters was sitting in the right front passenger seat of a Lincoln Continental driven by Herman Lewis. Also on the freeway, two or three car lengths ahead, was a red Mustang driven by James Hooker. Kimberly McLean, the owner of the Mustang, was seated in the front passenger seat and Derrick Ross was seated on the passenger side of the back seat. Lewis told Masters that he recognized the red Mustang as belonging to someone from the Sobrante Park gang and that the driver was Booby Hooker. Lewis believed that members of that gang had shot at his car window.

When the Lincoln was in the left lane and the Mustang was a car length ahead in the adjacent lane, Masters pulled out a gun and began shooting at the Mustang. He fired four or five shots from Lewis's .38 revolver. Shots hit the trunk and the back window. One of the bullets also hit Ross in the back of the neck. He is unable to walk as a result of the shooting.

## II

Masters contends on appeal that section 654 prohibits his punishment both for section 245, subdivision (a)(2), and section 246 as the assault upon Ross and the discharge of the firearm into the occupied Mustang were part of one indivisible course of conduct. This assertion does not withstand analysis.

Section 654 prohibits the imposition of punishment for more than one violation arising out of an act or omission which is made punishable in different ways by different statutory provisions. This proscription applies not only where there is "but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63], citing *People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].)

The section 654 proscription against multiple punishment does not apply to violations arising from an indivisible course of conduct if during the course of that conduct the defendant committed crimes of violence against different victims. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Milan* (1973) 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956]; *In re Ford* (1967) 66 Cal.2d 183, 183-184 [57 Cal.Rptr. 129, 424 P.2d 681]; *People* v. *Burney* (1981) 115 Cal.App.3d 497, 506 [171 Cal.Rptr. 329]; *People* v. *Prater* (1977) 71 Cal.App.3d 695, 699 [139 Cal.Rptr. 566]; *People* v. *Braun* (1973) 29 Cal.App.3d 949, 975 [106 Cal.Rptr. 56], cert. den. *sub nom. Braun* v. *California* (1973) 414 U.S. 974 [38 L.Ed.2d 217, 94 S.Ct. 294] and disapproved on other grounds in *People*

v. *Green* (1980) 27 Cal.3d 1, 25, fn. 10 [164 Cal.Rptr. 1, 609 P.2d 468].) ■ "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839], cert. den. *Neal* v. *California* (1961) 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708].)

In *Miller,* our Supreme Court upheld the imposition of separate punishments for an indivisible course of conduct which resulted in the defendant's convictions for the robbery of one victim and the burglary of a second victim. Both offenses involved violence or the threat of violence; the robbery of Keating was committed at gunpoint and the burglary victim, Burk, suffered great bodily injury. The court reasoned that section 654's prohibition against multiple punishment did not apply in this instance. (*People* v. *Miller, supra,* 18 Cal.3d at p. 886.)

■ The preclusion of section 654's application does not depend upon a determination that the victims of one violent crime are entirely different from the victims of a second violent crime committed in the same course of conduct. As long as each violent crime involves at least one different victim, section 654's prohibition against multiple punishment is not applicable. (*People* v. *Miller, supra,* 18 Cal.3d at p. 886, fn. 11; see also *In re Ford, supra,* 66 Cal.2d at pp. 183-184 [court upholds multiple punishment for convictions of kidnap for robbery and robbery where one of the three kidnap victims was also the robbery victim].)

■ In our view, Masters's violation of section 245, subdivision (a)(2), and section 246, while in the same course of conduct, resulted in the commission of violent crimes against different victims. Manifestly, Derrick Ross was the unfortunate victim of Masters's assault with a deadly weapon and all three occupants of the Mustang were victims of his discharge of the firearm at the vehicle. As Masters's violent actions were performed in a manner likely to cause harm to all three individuals in the vehicle, and in fact did seriously injure one person, the section 654 proscription against multiple punishment for violations arising from an indivisible course of conduct is inapplicable.

Masters recognizes that section 654 does not preclude multiple punishment where a defendant has committed violent crimes against different victims. However, he urges that his violation of section 246, the discharge of a firearm into an occupied motor vehicle, did not constitute a crime with victims. Accordingly, he argues, section 654's prohibition should apply to

his sentence. Masters relies upon the opinion in *Martin* v. *Hall* (1971) 20 Cal.App.3d 414 [97 Cal.Rptr. 730, 53 A.L.R.3d 719], to support his proposition.

The *Martin* case concerned a legal malpractice action against a criminal defense attorney by his former client. At issue was the attorney's representation of the client in a trial in which the client was found guilty of the felonies of assault with a deadly weapon (§ 245) and the discharge of a firearm into an inhabited dwelling. (§ 246.) Prior to the attorney being retained by the client in the criminal proceeding for the felony offenses, the client had pleaded guilty and served time for the misdemeanor charge of disturbing the peace. (§ 415.) The misdemeanor charge and the felony charges arose out of the same incident. (*Martin* v. *Hall, supra,* 20 Cal.App.3d at pp. 417-419.)

In the malpractice action, the client asserted that the defense attorney should have utilized the misdemeanor conviction for the disturbing the peace offense for the purpose of causing a dismissal of the felony prosecution on the basis of the statutory and constitutional prohibitions against double jeopardy. He also claimed that the defense attorney should have argued that the client's punishment for the misdemeanor offense of disturbing the peace precluded his punishment for the felony offenses, pursuant to section 654. (*Martin* v. *Hall, supra,* 20 Cal.App.3d at p. 419.) The Court of Appeal held that the trial court committed prejudicial error by allowing the jury to decide whether or not the defense attorney should have raised the issue of double jeopardy. (*Id.,* at pp. 420-423.) More significant to the issue presented in the case at bench, the *Martin* court considered whether section 654's prohibition against multiple punishment applied to sentences imposed for the misdemeanor of disturbing the peace and the felony of discharge of a firearm into an inhabited dwelling. The Court of Appeal held that section 654 may apply even if the first punishment was suffered for a misdemeanor in a municipal court. However, the court specifically declined to rule on section 654's application in view of the fact that the victims of the disturbing the peace violation were not all the same as the victims of the felony charges. The court stated: "[T]he question of multiple punishment for crimes involving several victims is a live issue today and should not be decided in this civil case, to which the People are not a party, if we can avoid doing so." (*Id.,* at p. 425, fn. omitted.) Thereafter, the court stated that "defendant is mistaken in assuming, as a matter of law, that there were three victims to the felony charges. As far as the violation of section 246 is concerned, the crime does not involve victims in the ordinary sense. Who is the victim when a defendant pumps bullets into an inhabited, but temporarily vacant dwelling?" (*Id.,* at p. 426.)

Appellant's reliance on *Martin* is unpersuasive. The court in *Martin* explicitly stated that in a civil case where the People were not a party it would not decide the question of multiple punishment for crimes involving several victims. In addition, the court's reference to a violation of section 246 not involving victims in the ordinary sense, was in the context of a discharge of a firearm at an inhabited but temporarily vacant dwelling rather than an occupied vehicle. Unlike the example the court gave in *Martin,* Masters shot at an occupied moving vehicle containing a driver and two passengers. Clearly, all three individuals were victims of Masters's violation of section 246. In view of the fact that the offense requires that the vehicle be occupied, logic dictates that the occupants of the vehicle are victims of the crime.

Neither does the opinion in *People* v. *Kane* (1985) 165 Cal.App.3d 480 [211 Cal.Rptr. 628] provide support for Masters's position. In *Kane,* the Court of Appeal held that the section 654 prohibition against multiple punishment applied to a defendant's convictions for assault with a deadly weapon (§ 245, subd. (a)), discharge of a firearm into an occupied motor vehicle (§ 246), and possession of a firearm by a convicted felon (§ 12021), where the convictions arose out of the same shooting incident. However, this ruling is inapplicable to the instant case for the reason that there was only one victim in *Kane.* The same individual was the victim of both the assault with the deadly weapon and the discharge of the firearm into the occupied motor vehicle. (*Id.,* at p. 488.) Unlike *Kane,* multiple victims of violent crimes are involved herein, and application of section 654's prohibition against multiple punishment is precluded. Thus, while the question of different violent crime victims was not at issue in *Kane,* it is determinative of this issue in Masters's appeal.

### III-V*

. . . . . . . . . . . . . . . . . . . .

### VI

The judgment is affirmed.

Scott, J., concurred.

**WHITE, P. J.,** Concurring and Dissenting.—I think that the result the court's opinion publishes today is tenable; certainly the consequences of appellant's violence warrants the law's maximum punishment. However, the court's ratiocination is untenable, I think, in light of the record under review revealing the superior court's silence as to a matter on which its

---

*Parts III-V of this opinion are not certified for publication. (See fn., *ante,* p. 1124.)

jurisdiction may be said to precariously hinge. " 'A court may have jurisdiction of the cause of action and of the parties, but it may lack the authority or power to act in the case except in a particular way. Under such circumstances, it is now generally held that the court had no jurisdiction.' [Citation.]" (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839].)

I begin by quoting the record: "The Court: All right. Based upon the plea entered here in open court, which I will find was entered intelligently, knowledgeably, and voluntarily by Mr. Masters, I will make the finding that he has on or about the 24th day of March, 1985, violated the terms and conditions of Penal Code[1] Section 245 (2); that further in the course and scope of that violation he did inflict great bodily harm upon the person of Derrick Ross and for that reason is subject to enhancement under the provisions of section 12022.7;[2] *I would further find as to the second count that he violated the terms and conditions of Penal Code Section 246.* I will strike the enhancements alleged in 246, and pursuant to the motion will grant the third count, which is dismissed." Clearly, in connection with appellant's aggravated assault with a deadly weapon, the trial court identified Derrick Ross as victim No. 1, so to speak, relative to section 654's "multiple victims" exception.[3] Likewise evident is the sentencing judge's "silence" as to a matter jurisdictional, i.e., that an additional and different victim was not found or identified by the court in connection with appellant's section 246 violation. The judge's jurisdiction or authority to subject appellant to multiple punishment for his crimes is, in my view, suspect, then, warranting strict scrutiny if bottomed on an application of the "multiple victims" exception.

True, "[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] The trial court obviously misspoke as regards appellant's judicial admission of the alleged Penal Code section 12022.7 enhancement. As alleged, appellant admitted that he personally inflicted great bodily injury on Derrick Ross "with the intent to inflict such injury."

[3] Section 654 provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

"Section 654 bars multiple punishment for an indivisible course of conduct which violates more than one statute, and divisibility depends in turn on the defendant's intent: if all his offenses were 'incident to one objective,' the defendant may be punished only once. [Citation.]" (*People* v. *James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].) *However, a defendant "may nevertheless be punished for multiple convictions if during the course of that conduct he committed crimes of violence against different victims.* [Citations.]" (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552], italics added, cited in lead opn. at p. 1127.)

not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.) However, I can detect no rational or lawful basis for attributing to the sentencing judge an implied finding of an additional victim, implicated by reason of appellant's violation of section 246. An implied finding of victim No. 2 would, of course, be in order if the amended information had accused appellant of willingly discharging a firearm at an occupied motor vehicle at the time wishing or intending to vex, annoy or injure occupants Kim McLean or James Hooker.[4] Instead, however, the People exercised its exclusive prerogative by electing in the second count of the amended information to accuse appellant in the wording of the statute, sans alleging victims, of "willfully and maliciously" violating section 246.[5] Entitled at law, then, to the benefit of the reasonable doubt existing by reason of the second count's failure to accuse him of a section 246 violation with alleged victims, appellant's guilty plea judicially admitted only that he willingly and intentionally committed the *wrongful act* of discharging a firearm at an occupied motor vehicle, i.e., the terms and conditions (or elements) of section 246 expressly found to be true by the sentencing judge. "[A] plea of guilty admits all matters essential to the conviction." (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) "[A guilty plea] serves as a stipulation that the People need introduce no proof whatever to support the accusation: the plea ipso facto supplies both evidence and verdict. [Citation.]" (*People* v. *Chadd* (1981) 28 Cal.3d 739, 748 [170 Cal.Rptr. 798, 621 P.2d 837], cert. den. 452 U.S. 931 [69 L.Ed.2d 431, 101 S.Ct. 3066].)

"It is a well established rule in this state that 'an appellate court will never indulge in presumptions to defeat a judgment. It will never presume

---

[4] Section 7 provides one with the significance attached to the words "willfully" and "maliciously," to wit: ". . . [¶] 1. The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage; . . . [¶] 4. The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law; . . ."

[5] Count two of the amended information reads: "And the said MARVIN EUGENE MASTERS is further accused by the District Attorney of the County of Alameda, by the second count of this Information, of a felony, to wit: a violation of Section 246 of the Penal Code of California, in that on or about the 24th day of March, 1985, in the County of Alameda, State of California, said defendant did then and there wilfully and maliciously discharge a firearm at an occupied motor vehicle."

Manifestly, appellant was not put on notice by the People that he should be prepared to defend against the existence of a victim resulting from his violation of section 246, but see and compare *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]: " 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" (*Id.,* at p. 612; *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368 [173 Cal.Rptr. 453, 627 P.2d 183].)

that an error was committed, or that something was done or omitted to be done which constitutes error. . . .' " (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].)

Consequently, I presume the sentencing judge knew the law and applied it in accord with the posture of appellant's cause at the time of sentencing. I conclude that the judge's "silence" as regards a different victim, i.e., victim No. 2, was well considered and deliberate. Surely, the judge knew that his office and duty required him to afford appellant his fundamental right of due process, and not to in any way deny him the protection of his Fourteenth Amendment right. I think the judge correctly reasoned that it would deny appellant fundamental fairness if he subjected him to dual punishment on the basis of the "multiple victims" exception when the People had not alleged multiple violent crimes so as to be clearly understood as intending to prove different victims for each crime. Why? Because appellant's judicial admission could not, in light of the amended information, furnish evidence proving factually the existence of separate victims for each of his violent crimes. Obviously, appellant did not acquiesce or consent but strenuously objected to the court, on any basis, assuming jurisdiction to punish him for violating section 246 in the face of section 654's prohibition.

Based on the record presented, then, I hold that the court was without jurisdiction or authority to enhance appellant's punishment by one year, based on an additional or "multiple victims" analysis and application. Further, I presume that the sentencing judge reached the same conclusion, which accounts for the record's "silence" as regards multiple victims.

After digesting the lead opinion, I am certain that this court's majority are not activists usurping the Legislature's function, i.e., my colleagues cannot be reasonably accused of amending section 246 so as to add "victim" as a necessary element of the offense. Therefore, I am not overly disturbed by my colleagues' somewhat ingenious definition of a "victim" (see lead opn. at p. 1128). In any event, it is well established in our law that assault victims need not suffer actual injury, the likelihood of bodily injury occurring by reason of the defendant's means of force is sufficient. (See, for example, Pen. Code, § 245.)

In my view, the ratiocination of the court's majority is disturbingly indefensible because it accomplishes the evisceration of one of three express requirements relative to our law of sentencing defendants in cases of multiple convictions for violent crimes involving multiple victims. Until today's pronouncement by this court, published appellate decisions, without exception that I am able to discover, have either expressly or implicitly required that both the multiple crimes of violence together with each crime's different victims be alleged, proved and found to be true in the trial court.

*People* v. *Miller, supra,* 18 Cal.3d 873, cited and relied upon in the lead opinion at page 1127, is a case proving the point. At page 886 in *Miller,* the Supreme Court pointedly observed that "the victim of the robbery as alleged, proved and found to be true was John Keating" and that the "burglary [as] alleged [under sections 459 and 461], proved and found to be true is a crime of violence committed against Burk." (See also *In re Ford* (1967) 66 Cal.2d 183, 184 [57 Cal.Rptr. 129, 424 P.2d 681] [section 654's prohibition against dual punishment did not apply "because the People alleged and proved and the jury found that he kidnaped victims A, B, and C for the purpose of robbery (count I) as well as robbing C (count II)."]; *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998] [petitioners convicted of kidnapping Bayliss for purposes of robbery and of first degree robbery of Brody, i.e., separate violent crime each with separate victims alleged, proved and found to be true; dual punishment proper]; *People* v. *Ridley* (1965) 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124] [deadly weapons employed in one incident, assault upon Watley and first degree robbery of Bennett alleged, proved and found to be true; dual punishment proper].) The list of cases adhering religiously to the "alleged, proved, and found true" requirement is nigh inexhaustible, and, of course, includes *People* v. *Milan* (1973) 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956]; *People* v. *Burney* (1981) 115 Cal.App.3d 497, 506 [171 Cal.Rptr. 329]; *People* v. *Prater* (1977) 71 Cal.App.3d 695, 699 [139 Cal.Rptr. 566], and *People* v. *Braun* (1973) 29 Cal.App.3d 949, 975 [106 Cal.Rptr. 56], disapproved on other grounds in *People* v. *Green* (1980) 27 Cal.3d 1, 25, footnote 10 [164 Cal.Rptr. 1, 609 P.2d 468], cases cited in the lead opinion at page 1127. In *Milan,* it was alleged, proved and found true by the jury that Milan attempted to murder Robert and committed a first degree robbery of Lester. In *Burney,* it was alleged, proved and found true by the court that the defendant assaulted victim Williams with a deadly weapon and manslaughtered victim Grant during a crowded bar room quarrel culminating in a shooting. In *Prater,* it was alleged that the defendant committed two assaults with a deadly weapon on separate victims, proof was received and found to be true that both victims were injured with but one bullet; there was no merit to appellant's contention that section 654 barred dual punishment. In *Braun,* it was alleged, proved and found to be true by the jury that the defendant kidnapped victim Tim and raped victim Susan. Dual punishment was upheld; first, on the basis of "divisible acts," and secondly, on the basis of multiple but separate victims for each crime of violence.

Unquestionably, appellant's off the record plea bargain negotiations ultimately dictated the prosecution's actions asking leave of the court to amend the information and thereafter motioning the court to strike count III from the information as amended which accused appellant of assaulting Hooker with a deadly weapon. Consequently, I conclude that during the in cham-

bers discussion resulting in the court's assent to the proposed plea bargain, the multiple victims exception was never made a serious topic of consideration. Surely, in light of the case law's "alleged, proved and found to be true" requirement discussed above, the prosecution would have at least reasoned by analogy to the statutory and case law as regards raising a defendant's uncharged prior felonies that are discovered before sentencing. (Pen. Code, § 969a; *People* v. *Martin* (1978) 87 Cal.App.3d 573, 579 [151 Cal.Rptr. 141]; Pen. Code, § 1025; *People* v. *Barwick* (1936) 7 Cal.2d 696 [62 P.2d 590].) As we know, however, the prosecution did not seek leave to amend count II of the information so as to allege victims in addition to Ross, alleged in the first count. Finally, my conclusion is firmly entrenched by the presumption that the judge, when contemplating his reasons for his sentence choice, understood that he was enhancing appellant's punishment and that one of several major limitations on enhancements is section 654's prohibition against dual punishment. (Cal. Rules of Court, rule 405(c).) By the same token, the judge understood that appellant had the right to notice that the prosecution was seeking enhanced punishment. Further, the court understood that if the facts supporting an enhancement are not alleged, the enhancing portion of the sentence could not stand. (*People* v. *Neal* (1984) 159 Cal.App.3d 69, 73 [205 Cal.Rptr. 384].) Consequently, the judge deliberately remained silent and found no additional victims.

Prior to executing in open court appellant's negotiated plea bargain, a stipulation was entered of record agreeing to the existence of a factual basis for his "guilty" pleas. In addition, the reporter's transcript of the proceedings at appellant's preliminary hearing dated May 28, 1985, was submitted and received as evidence by the superior court, both procedures occurring before appellant waived formal arraignment on the amended information. The reporter's transcript, dated August 6, 1985, reveals that the judge actually reviewed the preliminary hearing transcript prior to making the express findings quoted at the outset (see *ante,* p. 1131). Further, page 7 of the August 6, 1985, record reveals the trial judge acknowledging his "doubt" as to the correctness of his "analysis" relative to "the issue of the 654." I quote the record: "I have indicated to Mr. Bailey, so that he could convey to his client that I will, notwithstanding the general prohibition against appeals from pleas, that I would certify for cause because of the doubt, the issue of the 654, so that if the analysis which I have made is incorrect, a remittitur would instruct me to reduce the sentence from eight to seven years."

As we now know, the judge's "analysis," apparently made in his chambers, was not put on the record; however, the cause of the court's expressed "doubt" is, I think, nevertheless ascertainable.

Obviously, the factual allegations of the amended complaint, considered alone in the absence of any evidence adduced at the preliminary hearing, did not give rise to the court's "doubts." As alleged, there was no basis for even suspecting that appellant's dual crimes resulted from a violent continuous course of conduct giving rise to a section 654 issue. While off the record plea bargain negotiations undoubtedly alerted the judge to as much, only upon reviewing the evidence adduced at the preliminary hearing could he be officially apprised of "the issue of the 654." In other words, while the allegations of the amended information did not provide a basis, the preliminary transcript contained substantial evidence upon which to base findings of fact giving rise to a section 654 issue at sentencing. The evidence warrants a finding that appellant's violent conduct, i.e., firing from a handgun five bullets at a moving motor vehicle being operated on a public highway, constituted in time a continuous transaction. In addition, the evidence adduced at the preliminary hearing supports a finding that Hooker was driving the motor vehicle, that McLean was a front seat passenger, and Ross occupied the rear passenger seat. Directed to do so by our appellate standard of review, I presume that the sentencing judge implicitly made these factual findings. By a process of elimination, then, the cause of the court's "doubts" as to the propriety of its imposition of dual punishment notwithstanding section 654's prohibition need not elude this court. In my view, of course, the judge correctly decided to defer to appellant's fundamental right of due process and not defeat his own judgment by resorting to section 654's multiple victims exception.

The available "analysis," then, affording appellant due process while authorizing appellant's dual punishment, i.e., multiple criminal objectives, independent of and not merely incidental to each other (see *People* v. *Perez* (1979) 23 Cal.3d 545, 554 [153 Cal.Rptr. 40, 591 P.2d 63]), bottomed, I presume, the judge's sentencing choice imposing a one-year enhancement of appellant's punishment for admittedly violating section 246. Well settled appellate decisions instructed the judge that it was within the court's jurisdiction to determine from the evidence before it whether appellant's otherwise indivisible act of firing five bullets in rapid succession was in fact a divisible transaction on the basis of substantial evidence proving separate intents and criminal objectives entertained by appellant. (*People* v. *Perez, supra,* at pp. 551-552; *In re Adams* (1975) 14 Cal.3d 629, 636 [122 Cal.Rptr. 73, 536 P.2d 473]; *In re Hayes* (1969) 70 Cal.2d 604, 605-611 [75 Cal.Rptr. 790, 451 P.2d 430]; compare *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19-21.) As I see the record, it was by way of a relatively easy and simple analysis that the judge upon objective inquiry isolated and identified appellant's dual criminal intents and objectives. Appellant's judicial admission of the facts alleged in the second count furnished evidence proving and identifying his initial intent and criminal objective, i.e., willingly discharging a

firearm at an occupied vehicle, a wrongful act. The reasonable inference to be drawn from Hooker's testimony is that the first three shots fired by appellant did not hit the automobile, evidencing his intent not to injure or harm any of its occupants. This fact undoubtedly accounts for the prosecution's willingness to dismiss count three that accused appellant of assaulting Hooker with a deadly weapon. Reckless conduct, to which appellant admitted, is conduct falling short of "an act the direct, natural and probable consequences of which if successfully completed would be the injury of another." (*People* v. *Rocha* (1971) 3 Cal.3d 893, 898 [92 Cal.Rptr. 172, 479 P.2d 372]; *People* v. *Lathus* (1973) 35 Cal.App.3d 466, 469-471 [110 Cal.Rptr. 921].)

The reasonable inference to be drawn from Hooker's testimony is that the last two shots fired by appellant hit the vehicle's trunk and back window. Appellant, of course, could abandon his reckless but criminal conduct to undertake a distinctly different intended criminal objective in the time it would take in response to deliberately change his aim and fire off the two remaining shots. I presume the sentencing judge so analyzed the record in light of appellant's judicial admission furnishing evidence and verdict that he personally assaulted Ross with a handgun at the time, specifically intending to inflict great bodily injury on Ross, and that appellant did.

Implicitly, then, the sentencing judge's analysis isolated and identified appellant's multiple intents and criminal objectives, as separate and distinct as the two counts pled them, appellant's guilty plea proved them. Then, of course, they were found by the judge to have been entertained by appellant. Manifestly, even though appellant's crimes were closely connected in time and each a part of the same criminal venture, substantial evidence supports the judge's implied finding that each was a separate and distinct act, when measured by appellant's intent, and was not incidental to or the means by which any other offense was accomplished. (*People* v. *Perez, supra,* 23 Cal.3d at p. 553.)

At page 6 of the August 6, 1985, transcript, there is a clue that when in chambers appellant's trial counsel urged to the sentencing judge that "[t]he only issue before us is whether the facts constituting the 245 and 246 are so intertwined that per section 654 they cannot be punished separately." In light of the record, including appellant's judicial admissions, the sentencing judge's analysis, I hold, correctly resolved the section 654 issue. To avoid this result on appeal, appellate counsel, endeavoring to carry appellant's burden to affirmatively show that the judge's analysis constituted error, advances an argument I find to be unpersuasive. As it is short, I quote at page 6 of appellant's opening brief. "In the instant case, appellant's assault on Derrick Ross and his shooting at Hooker's occupied vehicle were

different consequences of the same brief shooting incident. The incident and the violations stemmed from the single objective of shooting to avenge the vandalism of Lewis' car the previous week." Reviewing the preliminary transcript, a hint does appear from appellant's counsel's cross-examination of Herman Lewis that a "shooting to avenge" theory of the facts might be put forth by appellant at trial. Of course, appellant did not testify at his preliminary hearing. The best evidence, then, of his intent, indeed the only evidence, was furnished the judge by appellant's judicial admissions of the alleged intents attributed to him by the amended information, which, of course, effectively abandoned defense counsel's hinted theory of facts.

In the final analysis, it cannot be avoided that appellant's culpability substantially increased when he abandoned his initial intended act willingly and recklessly discharging a firearm at a motor vehicle not intending, as is reasonably inferable from the evidence, to cause harm or injury to its occupants albeit a possibility, and then engaged in a distinctly separate additional act to completion, an act throughout which appellant specifically intended to inflict great bodily injury upon Derrick Ross.

Thus, although I respectfully dissent from the court's reasoning, I concur in the court's judgment.[6]

Appellant's petition for review by the Supreme Court was denied January 29, 1988. Mosk, J., was of the opinion that the petition should be granted.

---

[6]Not that it adds anything, but I have come to appreciate why in all probability the judge entertained a doubt as to its analysis of the section 654 issue. In several decisions our Supreme Court has observed: " 'Because of the many different circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an "act or omission," there can be no universal construction which directs the proper application of section 654 in every instance.' [Citations.]" (*People* v. *Perez, supra,* 23 Cal.3d 545, 551.)

Court and respective trial counsel are, I think, appropriately advised that it has not escaped the court's attention that we review a case in which plea bargaining of "serious felonies" occurred in the superior court. Presumably, then, that portion of the record showing compliance with section 1192.7 was not transcribed or unintentionally overlooked when the record on appeal was prepared. While on the subject of records, obviously this court's decisionmaking herein would be easier, swifter and perhaps surer if the in chambers discussion and analysis had been reported or restated for the record.

Finally, I think that neither seven or eight years punishment approaches fairly section 654's purpose, given appellant's admitted intentional infliction of great bodily injury on victim Ross. Assuming lawful reasons for the plea bargain, no sound reason comes to my mind why this "test case" should have occurred. Either a plea bargain for eight years punishment should have been approved by the court or the appellant should have been afforded a fair trial as charged. Appellant's problem, as I see it, is not one year enhanced punishment; it is my view that he will remain justly punished until he decides how to make use of his life to make up for the life he senselessly changed.