Filed 1/13/21  P. v. McMorries CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CRAIG ALLEN MCMORRIES et al.,<br><br>  Defendants and Appellants. | B298519<br>(Los Angeles County<br>Super. Ct. No. TA144696)<br><br>ORDER VACATING ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; *CORRECTED* ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

This court's January 12, 2020 order modifying the opinion and denying appellant Garcia's petition for rehearing is hereby vacated.

The opinion in the above-entitled matter filed on December 31, 2020 is modified as follows:

1.      On page 2, in the second paragraph, a footnote 2 is added immediately following the sentence:  "The defendants raise separate challenges on appeal."  That added footnote reads:

**2** Garcia joined in McMorries's arguments regarding jury instructions and the separate sentence for shooting at an occupied building.  McMorries joined in all of Garcia's arguments.

2.	Due to the added footnote 2 on page 2, all subsequent footnotes are renumbered.

These modifications do not constitute a change in the judgment.  Appellant Garcia's petition for rehearing filed on January 6, 2021 is denied.

_____

 ROTHSCHILD, P. J.        CHANEY, J.        FEDERMAN, J.*

---

**\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/31/20 P. v. McMorries CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRAIG ALLEN MCMORRIES et al.,<br><br>    Defendants and Appellants. | B298519<br><br>(Los Angeles County Super. Ct. No. TA144696) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke, II, Judge. Affirmed in part, reversed in part.

Chris R. Redburn, under appointment by the Court of Appeal, for Defendant and Appellant Craig Allen McMorries.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Garcia.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent the People of the State of California.

_____

A jury convicted defendants Craig Allen McMorries and Daniel Garcia of one count each of first degree murder (Pen. Code, § 187, subd. (a)),[1] one count each of shooting at an occupied building (§ 246), and two counts each of possession of a firearm by a felon.  (§ 29800, subd. (a)(1).)  The jury also found true allegations that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that each defendant personally discharged a firearm causing great bodily injury or death.  (§ 12022.53, subd. (d).)  The trial court imposed an aggregate sentence of 65 years to life on each defendant.

The defendants raise separate challenges on appeal. McMorries contends that his convictions must be reversed because the trial court erred by failing to instruct the jury that a prosecution witness was an accomplice, and because the prosecutor committed misconduct by shifting the burden of proof during closing arguments.  He also contends that the court erred by failing to stay under section 654 his sentence for shooting at an occupied building.  We disagree.

 Garcia contends that one of his convictions for possession of a firearm must be reversed because the crime is a continuing

_____

[1] Subsequent unspecified statutory references are to the Penal Code.

offense that he violated only once. In addition, Garcia contends that the abstract of judgment must be amended to correctly reflect the fines the trial court imposed, and to correct his credit for time served. We agree with all of Garcia's claims.[2]

## FACTS AND PROCEEDINGS BELOW

The murder occurred at a detached residential garage in Carson that operated as an informal casino, where people would gather to play cards or use gambling machines installed inside. At around 5:30 a.m. on October 6, 2017, approximately 15 people were inside the garage when they heard a knock at the door. Franklin Atoigue answered the door and said, "Oh, shit." Two men fired six bullets into the garage, one of which struck Atoigue in the chest, killing him. Apart from Atoigue, none of the people inside the garage saw the shooters. Video footage from surveillance cameras in the alley where the garage was located showed a heavyset man fleeing from the garage at 5:37 a.m.

Approximately three weeks later, on October 25, Los Angeles County Sheriff's deputies arrested McMorries's sister Trudy[3] on a misdemeanor warrant. In a subsequent interview, Trudy told a detective that McMorries had admitted

---

[2] In his opening brief on appeal, Garcia contended that we must remand the case for a new sentencing hearing because the trial court was unaware that it could reduce his enhancement for firearm use (§ 12022.53, subd. (d)) to a lesser enhancement. In his reply brief, he recognized that this argument was without merit and withdrew it. We agree with that determination.

[3] We refer to Trudy McMorries by her first name in order to distinguish her from defendant Craig Allen McMorries. We intend no disrespect.

to her that he was involved in the murder. Trudy confronted Garcia about it, and Garcia also admitted he was involved, saying "[t]he garage door opened and the guy got killed." An officer showed Trudy the surveillance footage, and she identified McMorries as the heavyset man fleeing from the scene. According to Trudy, McMorries was a member of the Carson 13 gang, and Garcia was a member of the Catskill gang. The two gangs are allied with each other against the Scott Park Piru gang, a predominantly Samoan gang in Carson. Atoigue was not a gang member, but he appeared to be of Samoan ancestry. At trial, Trudy testified that she did not remember most of the statements she made to police, and that she told police what they wanted to hear for fear that they would take her daughter away. In a jailhouse phone call after Trudy testified, McMorries told his mother that Trudy had done well. McMorries's mother said, "I told her what to do. I hope she listened." McMorries answered, "She did."

The day after Trudy told the detective about McMorries's involvement in the murder, sheriff's deputies arrested McMorries as he was driving a pickup truck accompanied by K.S. The truck belonged to K.S.'s husband. Deputies searched the vehicle and discovered a loaded nine-millimeter Ruger gun locked in a compartment in the rear of the vehicle. In an interview with a detective, K.S. said that the gun belonged to McMorries, and that she had seen him the day before with the gun in his pants and some bullets in his pocket. At trial, K.S. recanted her previous statements and claimed that the voice in the recording of the interview was not hers.

On the same day that McMorries was arrested, sheriff's deputies spotted Garcia at a nearby condominium complex.

4

When Garcia saw the deputies, he immediately began running away and discarded a backpack he had been wearing. The deputies searched the area and recovered the backpack. Inside, they discovered a loaded .380 caliber Bersa handgun, as well as mail belonging to Garcia.

Criminalists at the Sheriff's Department determined that the bullets and casings recovered from the scene of the murder came from the firearms recovered during Garcia and McMorries's arrests, and that the .380 bullet that killed Atoigue had been fired from the gun discovered in Garcia's backpack. DNA from the gun recovered during McMorries's arrest matched McMorries.

On December 4, 2017, sheriff's deputies arrested Garcia's girlfriend Lucy Barbic on suspicion that she was an accessory to the murder. Barbic told police that on the night of the murder, she was "hanging out" with Garcia in his garage, approximately one mile away from the location of the shooting. McMorries was present, as was another man, Robert Sedano.[4] The three men left the garage while Barbic remained inside with a woman named Sooyoung. A few minutes later, Barbic heard gunshots. Garcia called Barbic on her cellular phone and asked her to come pick him up because "[t]hey're shooting." At around the same time, Sedano returned and told Barbic and Sooyoung that they had to leave. Barbic left and walked back to her vehicle, where she saw McMorries running toward the garage. He was sweaty, breathing heavily, carrying a firearm and had a crazy look in his eyes. During the next hour, Garcia and Barbic called and

---

[4] The prosecution accused Sedano of acting as a lookout in the murder and tried him alongside McMorries and Garcia. The jury was unable to reach a verdict as to Sedano, and the court declared a mistrial.

messaged one another several times. Garcia asked Barbic to pick him up, but Barbic refused to do so and went to a friend's house instead.

Later that day, Garcia told Barbic that "the Samoans were over there shooting at them, and they had to go shoot back at them." The next day, Barbic overheard a phone conversation in which McMorries admitted that they had "murders on their . . . gun[s]." Barbic confirmed that the guns the deputies recovered belonged to the defendants, and that McMorries was the man seen in the surveillance video.

Between 5:30 a.m. and 5:40 a.m. on October 6, 2017, the same time that the shooting occurred, McMorries's cellular phone was used to call the customer service number at the cable company Spectrum, and then immediately afterward to call Southern California Edison. Data from the phone company showed that the calls originated from the area near where McMorries lived and where the murder took place. There was no evidence of who used the phone to make the calls.

Following his arrest, Garcia communicated with Barbic from jail via both phone calls and letters, and used code words that Barbic interpreted to mean he was asking her to remove items from his residence and help him establish an alibi. Barbic agreed to help him.

## DISCUSSION

### A. *Accomplice Instruction*

McMorries contends that the trial court erred by failing to instruct the jury sua sponte that Barbic was an accomplice to the murder, and that her testimony alone was not sufficient to convict him. We disagree. The evidence showed at most

6

that Barbic was an accessory after the fact, not an accomplice. Furthermore, even if she were an accomplice, the error would have been harmless because there was substantial corroborating evidence connecting McMorries to the crime.

A defendant may not be convicted on the testimony of an accomplice without corroboration by other evidence. (§ 1111.) "When there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices." (*People v. Frye* (1998) 18 Cal.4th 894, 965–966, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The court's failure to instruct the jury on these principles, however, " 'is harmless if there is sufficient corroborating evidence in the record.' " (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 303, quoting *People v. Lewis* (2001) 26 Cal.4th 334, 370.) The evidence "is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." (*People v. Fauber* (1992) 2 Cal.4th 792, 834; accord, 5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 686, p. 1058.)

In this case, the trial court was not required to instruct the jury on accomplice liability because the evidence showed only that Barbic agreed to help Garcia remove items from his bedroom and to help him establish an alibi. This was enough to make her an accessory after the fact,[5] but an accessory is not an accomplice. (*People v. Sully* (1991) 53 Cal.3d 1195, 1227 (*Sully*).)

---

[5] Indeed, Barbic was charged as an accessory to the murder. She admitted in her trial testimony that she received immunity from prosecution in exchange for testifying against defendants.

7

With no sufficient evidence that Barbic was "liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given" (§ 1111), the trial court was not required to give an accomplice instruction. McMorries argues that Barbic was an accomplice because she was in a "love-hate relationship" with Garcia, was associated with the gangs the defendants belonged to, and was with the murderers just before and just after the killings. But this is insufficient to make her an accomplice. Even if we assume for the sake of argument that a reasonable jury could infer that Barbic knew about or suspected defendants' plan, no evidence showed that she "promote[d], encourage[d], or assist[ed] the perpetrator and *share*[d] the perpetrator's criminal purpose," as is required for conviction as an aider and abettor. (*Sully*, *supra*, 53 Cal.3d at p. 1227.)

Even if Barbic was an accomplice, the error in failing to instruct the jury would have been harmless because there was  strong corroborating evidence of McMorries's guilt. Other witnesses, including his own sister, made statements to police connecting McMorries to the crime. In addition, deputies discovered one of the murder weapons with McMorries's DNA on it in a car McMorries was driving, and the passenger in the car told a detective that she had seen McMorries with the gun. Cases with similarly strong corroboration have led the Supreme Court to determine that any error in failing to instruct the jury on accomplice testimony was harmless. (E.g., *People v. Gonzalez and Soliz*, *supra*, 52 Cal.4th at p. 303 [testimony from a nonaccomplice regarding the defendant's preparation for a robbery, fingerprints on a vehicle used in the crime, and tape-recorded statements by the defendant]; *People v. Arias* (1996)

8

13 Cal.4th 92, 143 [eyewitness testimony of a robbery, as well as testimony from nonaccomplices that the defendant made incriminating statements].)

## B.  *Prosecutor Misconduct*

McMorries contends that the prosecutor committed misconduct by shifting the burden of proof to the defendant to provide evidence that he was not guilty.  We disagree.  The prosecutor's statements were no more than " ' " 'fair comment on the evidence' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*)), and did not constitute misconduct.

### 1.  Relevant Proceedings

Information from McMorries's cellular phone indicated that it was used to call the cable company Spectrum for a five-minute call beginning at 5:30 a.m. on October 17, 2016, and then immediately afterward for a six-minute call to Southern California Edison.  This was almost exactly the time Atoigue was killed.  Phone company records showed that during these calls, McMorries's phone connected to a cellular tower located near McMorries's home and to the garage where the shooting took place.  In closing arguments, McMorries's attorney argued that the cellular phone data showed that McMorries was not guilty.

In her rebuttal argument, the prosecutor responded that McMorries's girlfriend K.S. might have made the calls.  She said, "[T]here's a concept in the law called failure to call logical witnesses.  And so here's what I tell you.  If . . . McMorries was really the person on the phone, catching up on his utility bills, defense witness number one would have been Spectrum."

McMorries objected that this argument improperly shifted the burden of proof.  The trial court responded that the

9

prosecutor "just acknowledged what her burden is. All right? And that's to prove guilt beyond a reasonable doubt. The defendants have no burden."

The prosecutor continued: "Failure to call logical witnesses. Where is the person from Spectrum to say, 'Craig McMorries has an account; this is the account number; this is the account number for the residence that it relates to; this is the credit card that was used on October 6th, 2017'?

"How about defense witness number two, Southern California Edison. 'Craig McMorries has an account; this is the account number; this is the residence it relates to; this is the credit card that was used on that date and time.'

"So just keep that in mind. They have the same subpoena power as I do."

## 2.    Legal Standard and Application

"A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state." (*Hill, supra,* 17 Cal.4th at p. 820.) "The standards governing review of [prosecutorial] misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 . . . ; see *People v. Cash* (2002) 28 Cal.4th 703, 733 . . . .) Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' " (*People v. Friend* (2009) 47 Cal.4th 1, 29.)

10

Despite the higher standard that applies to a prosecutor's conduct, "[a] prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) In particular, "prosecutorial comment upon a defendant's failure 'to introduce material evidence or to call logical witnesses' is not improper." (*People v. Wash* (1993) 6 Cal.4th 215, 263.)

The prosecutor's conduct in this case fell within the scope of fair comment on the evidence. The prosecutor did not suggest that McMorries bore the burden of proof regarding the ownership of the cellular phone, but suggested that the jury should draw an inference from the defense's failure to call logical witnesses in support of McMorries's position. Moreover, we do not interpret the prosecutor's statement as an improper assertion "that a particular person, if called, would give certain testimony." (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 762, p. 1186.) Instead, the prosecutor merely pointed out that McMorries had failed to call witnesses who would have given relevant testimony about who owned or had access to the Spectrum and Southern California Edison accounts. If there was a danger that the jury would misinterpret the burden of proof, the trial court allayed it by telling the jury, in response to the objection, that the defense did not bear the burden of proof.

### C. *Separate Sentence for Shooting at an Inhabited Building*

The trial court imposed on each defendant a sentence of 15 years to life for shooting at an occupied building (§ 246), to be served consecutively to the sentence of 25 years to life for murder. (§ 187, subd. (a).) McMorries contends that this was improper

11

because the murder and the shooting at an occupied building were a single act for which only one punishment can apply. (See § 654, subd. (a).) We disagree. "There is a multiple victim exception to . . . section 654 which allows separate punishment for each crime of violence against a different victim, even though all crimes are part of an indivisible course of conduct with a single principal objective." (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1630–1631 (*Felix*).) That exception applies here, where in addition to killing Atoigue, the defendants endangered the lives of approximately 15 people by firing multiple bullets into the garage.

McMorries contends that the multiple-victim exception does not apply because he did not know there were others inside the garage. The claim that McMorries was ignorant of the presence of others in the garage is dubious, given that there were at least 10 people present inside the relatively small garage at the time of the shooting, and that the garage was known in the neighborhood as a location where people gathered late into the night. Moreover, the multiple-victim exception does not depend on a defendant's actual knowledge of the number of victims. The defendant is more culpable, and therefore subject to multiple punishment, where he " ' " ' "commits an act of violence with the intent to harm more than one person *or by means likely to cause harm to several persons*." ' " ' " (*People v. Centers* (1999) 73 Cal.App.4th 84, 99, italics added.) "[W]here the crime of shooting at an inhabited residence is involved, a defendant need not be aware of the identity or number of people in the house to be punished separately for each victim." (*Felix*, *supra*, 172 Cal.App.4th at p. 1631.)

McMorries also argues that our Supreme Court's opinion in *Neal v. State* (1960) 55 Cal.2d 11, disapproved on another ground by *People v. Correa* (2012) 54 Cal.4th 331, 344, bars separate punishment for his offense of shooting at an occupied building. We disagree. In *Neal*, the Court held that a defendant who started a fire in a bedroom, severely burning its inhabitants, could not be punished separately for arson and for attempted murder. (*Neal, supra*, at pp. 20–21.) But in that case, there were only two victims, and the defendant was convicted of two counts of attempted murder. (*Id.* at p. 15.) In this case, by contrast, the people present in the garage were victims of the shooting at an occupied building, but not of murder. "As long as each violent crime involves at least one different victim, section 654's prohibition against multiple punishment is not applicable." (*People v. Masters* (1987) 195 Cal.App.3d 1124, 1128 (*Masters*).)

Nor are we persuaded that the other people inside the garage were not victims of shooting at an occupied building because "[t]he focus of this offense is the inanimate target," the building the defendants shot at, rather than the people inside the building. This claim misconstrues the law. Although a defendant need not hit or come close to hitting a victim in order to be guilty of shooting at an occupied building, "the offense nonetheless is one that, viewed in the abstract . . . poses a great risk or 'high probability' of death." (*People v. Hansen* (1994) 9 Cal.4th 300, 310, overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1199.) This is why it carries a more severe punishment than shooting at an *unoccupied* building. (Compare § 246 with § 247, subd. (b).) To argue that a person inside the building that the defendant shoots at is not a victim is to elevate semantics over substance. For this reason,

13

courts have not hesitated to apply the multiple-victim exception to violations of section 246. (E.g., *Felix*, *supra*, 172 Cal.App.4th at pp. 1630–1631; *People v. Anderson* (1990) 221 Cal.App.3d 331, 338–339; *Masters*, *supra*, 195 Cal.App.3d at p. 1128.) The trial court did not err by doing so in this case.

Finally, McMorries argues that multiple punishment is improper under *People v. Canizales* (2019) 7 Cal.5th 591, in which the Supreme Court limited the application of the "kill-zone" theory of attempted murder in cases where the defendant attempts to kill one victim and places numerous bystanders at risk. But *Canizales* applies to attempted murder. It does not stand for the proposition that a defendant can never be liable for other crimes that involve placing bystanders at risk. McMorries was convicted of shooting at an occupied building, not attempted murder. *Canizales* is irrelevant.

### D. *Multiple Punishment for Possession of a Firearm*

McMorries and Garcia were each charged with two counts of possession of a firearm by a felon. (§ 29800, subd. (a)(1).) The prosecution alleged that the first count occurred on the day of the murder, and the second on the day each defendant was arrested. Garcia contends that this was error because possession of a firearm by a felon is a continuing offense, for which he could be convicted only once. The Attorney General concedes that this is correct, and we agree.

A continuing offense " 'is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' [Citations.] Thus, when the law imposes an affirmative obligation to act, the violation is *complete* at the first

14

instance the elements are met.  It is nevertheless not *completed* as long as the obligation remains unfulfilled.  'The crime achieves no finality until such time.' " (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 525–526.)  "The Supreme Court has recognized that possession of a firearm by a felon is a continuing offense." (*People v. Mason* (2014) 232 Cal.App.4th 355, 365 (*Mason*).)

" 'In the case of continuing offenses, only one violation occurs even though the proscribed conduct may extend over [an] indefinite period.' " (*Mason*, *supra*, 232 Cal.App.4th at p. 365.) In this case, there was evidence that Garcia and McMorries possessed their handguns on the day of the murder, and that they had them at the time of their arrest, with no indication that they ever relinquished the weapons in the interim. Consequently, they each committed the offense only once, and could be convicted of only one count.  (See *id.* at p. 366.)  The trial court erred by including a second count in each defendant's judgment.

The trial court imposed a concurrent sentence for each violation of section 29800, subdivision (a)(1).  The removal of one count from each defendant's sentence will therefore not affect the aggregate length of the sentence, nor will it call into question the trial court's discretionary sentencing choices.  For this reason, we will strike one count of possession of a firearm by a felon from each[6] judgment, without ordering the trial court to hold a new

---

[6] McMorries did not argue separately that one of his convictions for possession of a firearm should be stricken. Instead, he stated that he "joins in the arguments made in the opening brief of Daniel Garcia to the extent they benefit him."  The Attorney General contends that we should not give McMorries the benefit of Garcia's argument, noting that

sentencing hearing. (See *People v. Shabazz* (1985) 175 Cal.App.3d 468, 474.)

### F. *Correction of the Abstract of Judgment*

At the sentencing hearing, the trial court ordered that Garcia's parole revocation and restitution fines be stayed. The abstract of judgment, however, does not reflect the stay. Garcia and the Attorney General argue that we should order the trial court to correct the abstract of judgment. We agree that this is proper and will do so. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [court may correct clerical errors at any time].)

Garcia also contends that the court erred in calculating his credits for time served prior to sentencing. We agree. On the date of sentencing, the trial court awarded Garcia 580 days of credit for time served. Garcia was taken into custody on October 26, 2017, and was not released on bail. The date of the sentencing hearing was 583 days later, on May 31, 2019. We will order the trial court to amend the abstract of judgment to correct the miscalculation. (See *People v. Acosta* (1996) 48 Cal.App.4th 411, 420–421 [defendant may raise miscalculation of credits for

---

appellate counsel is required "to thoughtfully assess whether such joinder is proper as to the specific claims and, if necessary, to provide particularized argument in support of his or her client's ability to seek relief on that ground," rather than to make a cursory statement joining in any or all of a codefendant's claims. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363.) The Attorney General's argument is well taken, but in this case, we see no reason that McMorries is differently situated from Garcia, nor that he is not entitled to relief on the same basis.

the first time on appeal so long as he also raises other issues on appeal].)

## DISPOSITION

The second count of possession of a firearm by a felon is reversed as to both Garcia and McMorries. On remand, the trial court shall amend the judgment against each defendant accordingly. In addition, as to Garcia, the trial court is ordered to correct the abstract of judgment to reflect the stay of the parole revocation and restitution fines, and to correct the number of credits for time served. In all other respects, the judgments of the trial court are affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17