Filed 6/24/14  P. v. Butler CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MELVIN DAVON BUTLER,<br><br>    Defendant and Appellant. | B249957<br><br>(Los Angeles County<br>Super. Ct. No. TA126728) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed as modified.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.

————————————————

A jury convicted defendant of one count of shooting at an inhabited dwelling (Pen. Code,[1] § 246, count 1) and one count of attempted premeditated murder (§§ 664, 187, subd. (a), count 2). Defendant argues the trial court erred in failing to stay his sentence on count 1 pursuant to section 654 because both counts arise out of an individual course of conduct, namely the shooting of one victim. We affirm defendant's conviction, but modify the judgment to stay a section 12022.53, subdivision (d) enhancement on count 1.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 23, 2011, Tanesha Reed lived on East 103rd Street with her son. That day, she went to visit her friend Dominique Carter, who lived around the corner with Semaj Battle. Carter was the mother of Battle's two children. Reed saw Battle playing dice with defendant and two other men. Later, she made arrangements to go to Carter's home for a barbeque with her six-year-old son. When Reed arrived at Carter's house, Carter's two children were there, as well as Carter's sister Gina and Gina's infant girl.

About 15 minutes later, Battle came to the house and Reed observed that his mouth was bleeding. Battle told them defendant hit him in the face, and Battle hit defendant back. Battle wanted everyone to leave the house because he was afraid defendant would come and start another fight. Everyone went inside and locked the doors, and defendant walked by the house. All of the children were in a bedroom. Reed looked outside through the screen door and saw defendant with a gun standing at the front door. Battle asked defendant what he was doing at his house. Defendant started shooting. Reed heard three shots, and Battle fell over and screamed, "I'm hit." Gina hid with the children in a bedroom closet.

Defendant came in through the kitchen door with the gun in his hand. Battle went into a bedroom, shut the door, and sat on the floor near the bedroom door. Defendant forced his way into the room and Battle and defendant started fighting. Carter called 911. Defendant was on top of Battle trying to choke Battle. Carter grabbed a bottle of vodka

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

and hit defendant over the head, but defendant was still holding the gun. Defendant stated he was going to kill Battle because Battle had broken his jaw. Carter was able to pull defendant off Battle. Carter and Battle pulled defendant out of the bedroom, and the gun went off. Defendant tried to fire the gun again, but it would not fire.

Battle pushed defendant out of the house and they pulled the refrigerator in front of the kitchen door to keep it shut. Nevertheless, defendant was able to get in and was still holding the gun. Defendant and Battle fought some more and Battle pushed defendant into the back yard and fell on top of him. Carter was able to grab the magazine of the gun and ran out of the house. She heard a shot. Reed and Gina were outside, but the children were still in the closet.

The police arrived. Battle had gone back inside the house. Police went inside and told both defendant and Battle to put their hands up. Carter saw Battle turn to face the police, and at that time saw defendant shoot Battle again in the back.

Officer David Sanchez met Carter in front of the house. Carter told him there were children inside the house. Officer Sanchez went inside the house and while conducting a walk-through heard several "pops." He turned towards the back bedroom door and saw Battle standing in the door. At the time, Officer Sanchez did not know Battle was the victim. Officer Sanchez told Battle to put his hands up, but Battle raised his arm so Officer Sanchez fired two shots at him. Officer Sanchez had not seen a gun in Battle's hands, but his training had taught him Battle's hand motions were consistent with someone about to fire a weapon. Officer Sanchez could not tell whether he hit Battle, but did not believe it was possible he shot Battle in the back. Officer Sanchez subdued Battle and went into the backyard where he saw Officer Lance Perkins standing over defendant, pointing his weapon at defendant. Officer Perkins had confronted defendant in the backyard. When defendant pointed his gun at Officer Perkins, Officer Perkins fired several shots at him.

An information filed February 21, 2012 charged defendant with one count of shooting at an occupied dwelling (§ 246, count 1), two counts of attempted murder (Battle

3

and Carter, respectively) (§§ 664, 187, subd. (a), counts 2 and 3), and one count of assault with a firearm on a peace officer (§ 245, subd. (d)(1), count 4). As to counts 1 and 2, the information further alleged that defendant personally and intentionally discharged a firearm causing great bodily injury to Battle (§ 12022.53, subd. (d)) and that defendant personally inflicted great bodily injury on Battle (§ 12022.7, subd. (a)). Count 4 was dismissed prior to trial.

The jury convicted defendant of counts 1 and 2, and acquitted him on count 3. The jury found true the section 12022.53, subdivision (d) and 12022.7, subdivision (a) allegations to be true. The trial court selected count 2 as the base term, and sentenced defendant to a total term of 32 years to life, as follows: On count 1, the upper term of seven years plus 25 years for the section 12022.53, subdivision (d) enhancement, and 25 years to life on count 2, and imposed a 25-years-to-life term on the section 12022.53, subdivision (d) enhancement. The court imposed the section 12022.53, subdivision (d) enhancement to run consecutively on count 1, but concurrently with count 2. The court stayed the two great bodily injury enhancements under section 12022.7, subdivision (a) pursuant to section 12022.53, subdivision (f).

## DISCUSSION

Defendant argues that the trial court erred in failing to stay his sentence on count 1 pursuant to section 654 because the prosecution alleged and proved bodily injury enhancements on both counts under section 12022.7, subdivision (a). According to defendant, these two allegations under section 12022.7, subdivision (a), coupled with the fact count 1 (shooting at an occupied dwelling) did not allege the names of the victims, means that Battle, the only person at the house who suffered any injury, was the only victim of count 1. Thus, defendant argues, the multiple victim exception to section 654 does not apply because defendant had only one objective (killing Battle) and one victim (Battle). Thus, had the information not alleged the section 12022.7, subdivision (a) enhancement, defendant concedes that concurrent sentences would be proper. Respondent argues there were victims of the crime of shooting at an occupied dwelling

4

who were distinct from the victim of the attempted murder count, thus making the multiple victim exception applicable. Respondent also points out that defendant cannot be punished on both counts for the section 12022.53, subdivision (d) enhancement, and requests that we stay that enhancement on count 1; defendant agrees with respondent's request.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." Thus, a defendant may be convicted of, but not punished for, more than one crime arising out of the same course of conduct. (§§ 654, 954.) Thus, if all of the crimes committed were merely incidental to or were the means of accomplishing or facilitating a single objective, the defendant may receive only one punishment. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

However, if the defendant had several, independent criminal objectives, he or she may be punished for each crime that was committed in pursuit of separate objectives, even where the crimes shared common acts or were parts of an otherwise indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) The rule against multiple punishments prohibits concurrent sentences. (*People v. Deloza* (1998) 18 Cal.4th 585, 591–592.) The rule against multiple punishment also applies to enhancements. (*People v. Ahmed* (2011) 53 Cal.4th 156, 164.)

In reviewing the trial court's sentence we note that "[t]he defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]" (*People v. Adams* (1982) 137 Cal.App.3d 346, 355; *People v. Harrison*, *supra*, 48 Cal.3d at p. 335 [question of whether the defendant harbored a "single intent" is a factual determination made by the trial court].) On appeal we will sustain the court's implied factual determination if supported by substantial evidence. (See *People v. Osband* (1996) 13 Cal.4th 622, 730.)

5

The multiple victim exception applies "as long as each violent offense involves at least one different victim." (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1631; *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784–1785.) Thus, with respect to similar factual scenarios, courts have upheld dual punishment for firing at occupied vehicles and assault with a deadly weapon. In *People v. Masters* (1987) 195 Cal.App.3d 1124, the defendant spotted a rival gang member driving a car that held several other passengers, and, firing four or five shots at the car, hit one of the occupants. The defendant pleaded guilty to assault with a deadly weapon and shooting at an occupied motor vehicle, and properly received a separate sentence for each offense because defendant's conduct resulted in the commission of violent crimes against different victims. (*Id.* at pp. 1126–1128.)

Here, although count 1 did not allege the identities of the victims, the section 12022.7, subdivision (a) enhancement for that count did not limit the universe of victims of that count to Battle such that the bar of section 654 applied to prohibit multiple punishment for defendant's conviction on that count and the attempted murder count. Rather, count 1 applied to all occupants of the house and the shooting victim, Battle.

Further, it is of no import that the information did not identify the victims of count 1. The importance of identifying a victim in the information, for purposes of the multiple victim exception to section 654, was addressed in *People v. Centers* (1999) 73 Cal.App.4th 84. Primarily a kidnapping case, *Centers* dealt with the issue of whether the multiple victim exception to section 654 allowed a separate sentence for burglary even if the information did not identify a victim of the burglary. "We know of no case in which the court declined to apply the multiple victim exception simply because the victims had not been named in the information. Ordinarily, in determining whether Penal Code section 654 applies, the trial court is entitled to make any necessary factual findings not already made by the jury. [Citation.]" (*Id.* at p. 101.) *Centers* correctly pointed out that "a number of cases have upheld the application of the multiple victim exception based on evidence of multiple victims, without considering whether the identities of those victims had been pleaded." (*Ibid.*, citing *People v. Cruz* (1995) 38 Cal.App.4th 427, 434–435

6

and *People v. Guiterrez* (1992) 10 Cal.App.4th 1729, 1736–1737.) As in *Centers*, here the trial court's implied finding of multiple victims is supported by substantial evidence. The evidence supports the implied finding that the occupants of the house were all victims of the offense charged in count 1 because there was ample testimony that several adults and numerous children were in the house at the time of the shooting. Therefore, although count 1 did not specifically allege the identities of the victims in the house other than defendant, the information specifically alleged the great bodily injury enhancement was attached to Battle.

However, the section 12022.53, subdivision (d) enhancement was alleged on both counts, but that enhancement did not involve multiple victims and only applied to Battle. Thus, the section 12022.53, subdivision (d) enhancement must be stayed on count one.

## DISPOSITION

The judgment is modified to stay the Penal Code section 12022.53, subdivision (d) enhancement on count 1. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation. As modified the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7